## JAMES W. FITZSIMMONS

### *v.*

## FRANCIS O'NEILL.

*Opinion filed February 21, 1905—Rehearing denied April 6, 1905.*

1. CIVIL SERVICE—*section 12 of the Civil Service act construed.* Section 12 of the Civil Service act, providing that no employee in the classified service shall be removed except for cause, upon written charges, etc., does not apply to removal from office consequent upon the abolishment of the office itself in good faith and in the interest of economy.

2. SAME—*Civil Service act does not prevent abolishment of unnecessary office.* The Civil Service act does not restrict the right of a municipality to refuse to make an appropriation to pay the salary attached to an office not created by law, provided the municipality acts in good faith to reduce expenses by abolishing the office as being unnecessary, and not for the purpose of evading the Civil Service act.

3. MANDAMUS—*when order to pay salary is erroneous.* A writ of *mandamus* requiring the superintendent of police to restore the petitioner to the office of foreman of the repair shop, and to "permit, cause and allow him to receive and collect" the salary attached to the office, is erroneous, where the city council, acting in good faith to reduce expenses, has failed to make any appropriation for the payment of such salary.

4. MUNICIPAL CORPORATIONS—*failure to make appropriation for office is in effect an abolishment of the office.* Failure of a city council, acting in good faith for the purpose of reducing expenses, to make an appropriation for the office of foreman of the repair shop of the police department, the duties of which are added to those of another office without additional compensation, is an abolishment of the office, and is not in violation of the Civil Service law. (*City of Chicago* v. *Luthardt,* 191 Ill. 516, distinguished.)

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

This is a petition, filed by the appellant on August 6, 1902, in the circuit court of Cook county against the appellee, as general superintendent of police of the city of Chicago, for a writ of *mandamus,* directed to appellee as such general superintendent, commanding him forthwith to restore appellant to the position of "foreman of the repair shop" of the police department of the city of Chicago, held by him previous to March 19, 1902; and to permit him to perform the duties of said position; "and also to permit, cause and allow the petitioner to receive and collect the salary, emoluments and compensation, attached to said position, for the service rendered by the incumbent thereof to the city."

Answer was filed by appellee to the petition, to which answer a traverse was filed.

On January 9, 1903, the cause was submitted to the court for trial without a jury. The court found the issues for the petitioner, and that the material allegations of the petition were true, and awarded the writ of *mandamus* substantially in accordance with the prayer of the petition. An appeal was taken to the Appellate Court from the judgment of the circuit court, awarding the writ of *mandamus* and costs. On May 17, 1904, the Appellate Court reversed the judgment of the circuit court without remanding the cause, and in its

judgment made a finding of facts. The present appeal is prosecuted from the judgment so entered by the Appellate Court.

The petition recites the adoption of the Civil Service law by the city of Chicago; the existence in the police department of the city of an office or position, known as "foreman of the repair shop;" that such repair shop was for the manufacture and repair of wagons, ambulances, patrol boxes, etc., and other things, employed by the police department; that about twenty-two men were employed in such department, doing such work; that the duty of such foreman was to examine the wagons, etc., sent to the shop for repair, and lay out work for the different employes, and determine the character of the repairs to be made, and inspect them when completed, and supervise the work and keep a record of the work done in the shop and the time of the employes, etc.; that petitioner took the civil service examination for the appointment to such office or position of "foreman of the repair shop" of the police department and received the highest mark, and was duly certified to the general superintendent of police, and by him appointed to said office or position on December 24, 1898; that petitioner continued to fill said office or position, and discharge its duties until March 19, 1902, when he was prevented from a further discharge thereof; that, in the annual appropriation for the year 1902, the city council at the request of appellee failed to make an appropriation for the salary or compensation of said office or position for the year 1902; that such action by appellee and the city council was "for the sole and only purpose of dismissing or removing petitioner from his said position, and circumventing and evading said Civil Service act;" that the appropriation ordinance was passed by the council on March 17, 1902; and on March 19, 1902, appellee attempted to dismiss petitioner from said office or position by general order No. 18 of the police department, dated March 19, 1902, which order was as follows, to-wit: "John Carr, James

F. Christian and James W. Fitzsimmons, foreman repair shop, and Patrick Malone, assistant plumber, are hereby dropped from the rolls, no appropriation having been made by the city council for their salaries for the current year. This order to take effect at 7 o'clock this P. M.—(Signed) Francis O'Neill, General Supt. Police;" that petitioner protested to the general superintendent against said order and offered his services for the performance of the duties of said office or position, but the superintendent refused to permit him to perform such duties; that on March 31, 1902, petitioner served a written notice upon appellee, that he stood ready to do the work of such position, and tendered his services and stood prepared to perform the same instanter; but that said superintendent refused to permit him to continue in said duties on the ground that the city council had made no appropriation with which to pay petitioner's services; that the duties of said position have not been abolished, and can not be abolished, as it is essential for the proper management of said repair department, that there should be a superintendent of the same, etc.; that from March 19, 1902, until April 1, 1902, such duties were performed without warrant of law by one Patrick J. Reid, and, since the latter date up to the time of filing of the petition, by one William J. Ray; that neither Reid, nor Ray, has taken the civil service examination for such position, and that no one has been certified by the civil service commission for such position; that Reid is a wagonmaker, and Ray a laborer employed in such shop; that neither Reid nor Ray, while performing the duties formerly performed by petitioner, performed the duties pertaining to their former position, but devoted their entire time to the duties formerly done by petitioner; that such duties required the exclusive attention of one person; that all such acts are contrary to the provisions of the Civil Service act, and the rules established by the commission, contrary to the rights of the petitioner, and that petitioner by such means has been illegally prevented from performing the duties of

214—32

such position, and has been kept out of the same, and deprived of the honor and emoluments thereof.

The appellee answered the petition, admitting that he was superintendent of police of said city, and that an office or position, known as "foreman of the repair shop," existed in the police department, and that on December 24, 1898, appellant was appointed to said position in pursuance of an examination held by the civil service commission, and continued to fill the same until about March 19, 1902; that no appropriation for said position was made by the city council for the year 1902; denies that such failure to make the appropriation was for the purpose of dismissing or removing petitioner therefrom, and circumventing or evading the Civil Service act; that the position was unnecessary and a useless expense to the city, and for that reason alone the city council failed to make an appropriation therefor; denies that said duties have since March 19, 1902, or at any time, been performed by said Ray or Reid, or by any one, but that said position was abolished; that appellee has no power to reinstate petitioner or to revive or re-create said position; and that he has no money or appropriation within his control, and belonging to the city of Chicago, wherewith to pay to petitioner the salary prayed for by him.

The finding of facts, made by the Appellate Court and embodied in its judgment of reversal, is as follows: "The court finds that the action of appellant herein in dropping appellee herein from the rolls, and removing him from his position as foreman of the repair shop in the police department of the city of Chicago, was had and taken in good faith, and in the interest and promotion of economy, and to save said city a useless and unnecessary expense, and not for the purpose of circumventing or evading the provisions of the Civil Service act; that the sole reason why said city failed to make, and did not make an appropriation for the payment for the year 1902 of the compensation of said appellee's position, was because said city and its officers, including the

appellant, were of the opinion, entertained by them in good faith, that said position was unnecessary, and involved a useless and unnecessary expense."

EDMUND S. CUMMINGS, for appellant:

No officer or employee in the classified service of any city who shall have been appointed under the rules of the civil service commission, and after an examination, shall be removed or discharged except for cause, upon written charges and after an opportunity to be heard in his own defense. Civil Service act, sec. 12; *Chicago* v. *Luthardt,* 191 Ill. 516.

The position itself must be abolished in good faith, or the employee appointed under the rules of the civil service cannot be deprived of his employment except in the manner pointed out by the statute. *People* v. *Dalton,* 44 App. Div. (N. Y.) 566; *Chicago* v. *Luthardt,* 191 Ill. 516.

Where an employee is removed from office on economical grounds, there is a distinction to be made between cases where the duties of such office are performed by other clerks in the service in addition to their own duties, and where the duties of such office are performed by another person exclusively and without doing anything else.

An employee discharged in violation of the Civil Service law is entitled to be restored to his former position by *mandamus.* 19 Am. & Eng. Ency. of Law, (2d ed.) 773, 774; *People* v. *Kipley,* 171 Ill. 44; *People* v. *Kraus,* 171 id. 130; *People ex rel.* v. *Dalton,* 44 App. Div. (N. Y.) 566.

WILLIAM D. BARGE, (EDGAR BRONSON TOLMAN, Corporation Counsel, of counsel,) for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The finding of fact made by the Appellate Court in its judgment of reversal is binding upon this court. By the finding of that court that the action of appellee in removing

appellant from his position as foreman of the repair shop in the police department was taken in good faith and in the interest of economy, and to save the city an unnecessary expense, and not for the purpose of circumventing or evading the provisions of the Civil Service act; and that such removal was made solely for the reason that the city did not make an appropriation for the payment of appellant's salary for the year 1902; and that the city and its officers, including appellee, were of the opinion, entertained by them in good faith, that the position was unnecessary and involved a useless expense—the main issue, presented by the pleadings and tried by the court below, is decided against the appellant.

Some criticism is made by counsel for appellant upon the character of the finding. It is said that the Appellate Court should have found specifically whether or not the duties of appellant's position were performed, after his removal, by one Ray, who had been a painter in the repair shop, and whether Ray had performed such duties exclusively after appellant's removal and without performing any other duties whatsoever. The proof tended to show that the salary of appellant, as foreman of the repair shop, was $1200.00 per year, and that the salary of Ray, as painter in the repair shop, was $52.50 per month, and that, by the removal of appellant, the city was saved the expense of $1200.00 per year. It is said, however, that the duties of the appellant as foreman were not performed by Ray in connection with his duties as painter, but that after April 1, 1902, Ray ceased to perform any duties as painter, and performed only and exclusively the duties, which the appellant had theretofore performed as foreman; and that, therefore, appellant was merely removed for the purpose of making way for Ray as another appointee. There is evidence in the record, tending strongly to show that, when the order was issued removing appellant, one O'Brien was designated to perform appellant's duties. One Barber had been superintendent of construction in the repair department, and was succeeded by O'Brien as such

superintendent of construction therein. There is no evidence, so far as we are able to discover, that the appellee appointed Ray or Reid to perform the duties of foreman as successor to appellant. On the contrary, the appellee swears that the city comptroller notified him that he must exercise economy in his department, and that the appropriation, requested by him, was too large, and could not be made by the city council; and that he was notified by the city comptroller that only just so much money was available, and that he would have to get along with that amount of money, and should modify his "original statement for the appropriation;" and that he, appellee, did not request an appropriation for the position of foreman, because he considered that the superintendent of construction could fill the position successfully in addition to his other duties, and that he had done so. Appellee swears that the orders for repairs passed through his hands, and were turned over by him to the superintendent of construction. Ray himself says in his testimony, that he received his orders from O'Brien, the superintendent of construction; and that the orders he, Ray, gave from time to time during the day were given in carrying out the orders, that had been given to him in the morning by O'Brien, the superintendent of construction. It would thus appear, that the duties, which appellant had performed before his removal, were added to the duties to be performed by the superintendent of construction; and there is nothing to show that the duties of the latter official were exclusively and only the duties theretofore performed by appellant. There is evidence, tending to show that Ray was taken from the paint shop and assigned to the work formerly done by the appellant, but this was the act of the superintendent of construction. Whether it was proper or not for O'Brien thus to take Ray from his former work, and assign him to the performance of the work theretofore done by appellant, is not a matter which concerns appellant. In other words, the testimony of the appellee tends to show that, when appellant was re-

moved, the performance of his duties was assigned to the superintendent of construction to be performed by the latter in connection with his other duties, while the testimony of the appellant tends to show that one Ray, working upon a salary of $52.50 per month, was taken from the paint shop and assigned to the exclusive performance of the duties, formerly performed by appellant. All the testimony upon this subject was merely testimony in reference to evidentiary facts. The ultimate fact, which was the only fact necessary to be found by the Appellate Court, was the fact involved in the question, whether or not the removal of appellant was made in good faith, and in the interest of economy, and not for the purpose of evading the provisions of the Civil Service act. The question, whether or not the removal was made in good faith in the way thus stated, included and involved the subordinate question whether such duties were turned over to be performed by the superintendent of construction in connection with his other duties, or by Ray exclusively. Even if the contention of the appellant in regard to this matter is true, the city was saved the expenditure of $1200.00 a year, because Ray's salary still remained at $52.50 per month after the appellant's removal, and was not increased. Inasmuch, therefore, as the Appellate Court has found the material and ultimate fact in the way above stated, the question arises whether the Appellate Court has correctly applied the law to the fact found by it. The appellant upon the trial below submitted no propositions to be held as law in the decision of the case, but the appellee asked the court to hold as law two propositions, which the court refused to do. The first of these announced that appellant was not entitled to a writ of *mandamus* to re-instate him in the position of foreman of the repair shop of the police department of the city, for the reason that for the fiscal year 1902 no appropriation was made by the common council of the city for the payment of his salary, and there was a necessity for economy by the city in the operation of said department. The second proposition

submitted by the appellee asked the court to hold as a matter of law that, under the law and the evidence, the finding should be for the defendant.

Section 12 of the Civil Service act provides that "no officer or employe in the classified civil service of any city, who shall have been appointed under said rules and after said examination, shall be removed or discharged except for cause, upon written charges and after an opportunity to be heard in his own defense." (Session Laws of Ill. 1895, p. 88). The appellant contends that the removal was illegal, because no written charges were made against him, and he had no opportunity to be heard in his own defense. We are of the opinion that section 12 of the Civil Service act has no application to a case like the present. That section refers to cases where an officer or employe is removed for some reason personal to himself. His right to be heard in his defense upon written charges, as specified in section 12, implies that the cause of his removal is some dereliction, or neglect of duty, or incapacity to perform duty, or some delinquency, which affects his fitness for the position occupied by him. The provision in question does not apply to a case where the incumbent is dismissed for want of funds, or in order to reduce expenses, and when at the time of the dismissal, as was the fact in the case at bar, he has notice of that fact.

In *Phillips* v. *Mayor, etc. City of New York,* 88 N. Y. 245, a clerk in the fire department of the city was discharged, not for any cause personal to him, but because it was necessary for the fire department to conform its expenses to a reduced appropriation for the current year, and it appeared that, for that reason, the clerical force was reduced, and the person complaining was discharged; and it was held in that case that a provision in the statute of New York similar to section 12, as above quoted, had no application to the case there in hand, the court saying: "The object of this provision was to prevent removal except for cause, and then only after a hearing or an opportunity for a hearing. The pur-

pose of a hearing was to enable the clerk or officer proceeded against to satisfy the body or officer, having the power of removal, that he should be retained. The provision has no application to a case like this. This is not, properly speaking, a case of removal within the meaning of the statute. Here, the office or clerkship was abrogated, and there was no more need of plaintiff's services. He could not claim that the office or clerkship should be retained for his benefit, and the fire commissioners were not obliged to consult him before abrogating it. And further, the statute does not apply to a case like this where the officer is removed, not to make way for another, but because his services are no longer needed, or because there are no funds provided for his payment. The plain purpose of the statute does not reach such a case."

The language thus quoted is precisely applicable to the case at bar. There is nothing to show that the position of foreman of the repair shop in the police department of the city was created by any ordinance, or legislative act, of the common council of the city; nor is there anything to show that such foreman, when appointed, was appointed for any particular period of time. The appropriation ordinance, passed by the city council for the fiscal year 1902, showed appropriations for two blacksmiths, one plumber, two carriage-painters, two wagonmakers, two harnessmakers, two carpenters in the repair shop, one carpenter in the construction department, one tinner, two blacksmith helpers, and six laborers, but no appropriation for foreman of the repair shop. The thing, complained of by the appellant, is that in the year 1902 the city council made no appropriation for compensation to the foreman of the repair shop; and the natural conclusion to be drawn is that, theretofore, from December 24, 1898, when appellant was first appointed, down to March 19, 1902, the common council had every year made an appropriation for the position of foreman of the repair shop. The appellant accepted the position with the knowledge, that the

common council recognized it as a position or office by thus annually making an appropriation for the compensation of its incumbent. When, therefore, the common council omitted to make an appropriation, and the duties of the position were turned over to some other official, who for that reason received no addition to his compensation, the position was in fact and in effect abolished. The object of the Civil Service act was to prevent appointment to office as a reward for political service rather than for merit, but it was not intended to restrict the right of the municipality to refuse to make an appropriation for the payment of an incumbent of an office, provided the abolishing of the office, or the failure to make such appropriation, was made in good faith, and to reduce expenses, and not for the purpose of evading the provisions of the Civil Service act. The facts, as found in this case, show that the common council and the superintendent of police did not take their action with a view of evading the provisions of the Civil Service act. It certainly would be a harsh doctrine to hold that a city, or its officials, could not reduce their expenses by abolishing an unnecessary office, or refusing to make an appropriation for the salary of an office, when it was short of funds and did not need the services of the incumbent of such office.

In *Langdon* v. *Mayor, etc. City of New York,* 92 N. Y. 429, the plaintiff was a regular clerk in the finance department of the city of New York, and was removed because his services were not needed, and the court there say: "There was no contract, express or implied, to retain him in the service of the department for any definite time. He held his place subject to the power of the comptroller to remove him at any time under the provisions of the city charter. * * * That power was unlimited, except that it was provided that 'no regular clerk or head of bureau shall be removed until he has been informed of the cause of the proposed removal, and has been allowed an opportunity of making an explanation.' That limitation does not apply to a case like this. Its

purpose was fully explained in the cases of *People ex rel. Munday* v. *Fire Commissioners,* 72 N. Y. 445, and *Phillips* v. *Mayor, etc.* 88 id. 245. In the latter case, it was held not to apply to a case where a regular clerk was discharged, not to make way for another, but because there was no further need of his services, or because there were no funds provided for his payment. Here, the business of the department had so diminished that the plaintiff's services were not needed."

In *Lethbridge* v. *Mayor, etc. of New York,* 133 N. Y. 236, which was a case where a clerk in the department of the public works of the city was dismissed from his position because there was a failure to make an appropriation for the payment of his salary, it was held that his right to draw any more salary from the city ceased when the appropriation was expended, and he had notice of it; and it was also held that the provision of the statute, giving a clerk or officer the right to a hearing and the opportunity to make an explanation, was wholly inapplicable to a case where the removal was made for the reason that the appropriation, applicable to the payment of the salary, had been expended; and it was also there held that the plaintiff must be deemed to have accepted his position with the understanding that his right to hold it would cease when the appropriation, from which his salary was payable, was exhausted.

In *People ex rel. Corrigan* v. *Mayor, etc.* 149 N. Y. 225, where the facts showed that the term of the office or position involved was not defined by statute or otherwise, it was held that the incumbent could not be removed, and another appointed to fill his position, unless such position was abolished in good faith and for sufficient reasons, the court there saying: "While these statutes are positive in form, it is clearly not their intent to give to occupants of such positions a life tenure where, upon grounds of economy or for other proper reasons, the office or position is in good faith abolished;" and it was there held that, where the right existed to abolish a position upon economic grounds, the peremptory

writ of *mandamus* was improperly issued if the incumbent was discharged solely upon those grounds, and his discharge was made in good faith. (See also *McNamara* v. *Mayor,* 152 N. Y. 230).

In *People ex rel. Moloney* v. *Waring,* 7 App. Div. N. Y. 204, it was held that, where a veteran of the volunteer fire department of the city of New York and an honorably discharged soldier, an employe of the New York street cleaning department, was dismissed therefrom in the interests of economy, and because his services were not needed, and not as a mere pretext to get rid of him, or with the view of appointing another person in his place, the commissioner was not bound to present charges and give him a hearing. In *Matter of Kenny* v. *Kane,* 27 Misc. Rep. (N. Y.) 681, where a sewer inspector, appointed under the Civil Service act, was discharged by the commissioner of sewers, because in his judgment the services of the inspector were no longer required, the court held that the act, giving the applicant an opportunity to be heard, had no application to the case in hand, and it was there said: "To give an employe an opportunity to make an explanation when there is nothing to explain would be an idle ceremony. In analogous cases it has repeatedly been held that a person, protected by statutes similar to that of 1898, might be removed without a hearing where the cause for removal was, not an alleged dereliction or unfitness, but some reason, which no explanation could remove, such as an exhaustion of appropriation, an abolition of an office, or the devolution of the duties of an office upon some other person already holding another position."

In the case at bar, there was introduced in evidence one of the rules of the civil service commission in regard to the separation and re-instatement of employes, a portion of which rule is as follows: "Whenever, for lack of work or lack of funds or other necessary cause, it becomes necessary in any bureau to reduce the force in any employment within the classified service, the person last certified for such em-

ployment to such bureau from an eligible register shall be laid off first." (Sec. 3 of rule 13). This rule recognizes the existence of a power in any one of the bureaus connected with the city government, to reduce the force in any employment within the classified service for lack of work, or lack of funds. No question is made here as to whether or not appellant was the proper person to be laid off first in case of a removal from the office of foreman of the repair shop in the police department. The material fact is that the power of removal for lack of funds is recognized by the rules of the civil service commission as existing in the city bureaus.

The case of *City of Chicago* v. *Luthardt,* 191 Ill. 516, is not an authority against the views here expressed, because in that case, although the appellee therein was dismissed and the chief of police refused to allow him to perform the duties of his office because the common council of the city failed to make an appropriation for his salary, and such cause of removal was held to be insufficient, it appeared that the common council failed to make an appropriation for his salary in the appropriation bill for the year 1898 by the name of "Chief clerk of the detective bureau of the department of police," and attempted to discontinue or abolish said office or position by changing the name thereof to "Secretary of the chief of detectives, rank of lieutenant," without in any way changing the duties of said office or position, and made an appropriation of $1500.00 for the salary of said office of chief clerk under the name and style of "Secretary to chief of detectives, rank of lieutenant." There, the common council merely changed the name of the official but did not change his duties, and made an appropriation for the salary of the same office by another name. No such facts exist in the case at bar. The appropriation bill here did not designate the foreman of the repair shop by another name, nor appropriate any salary for his successor acting under another name.

It is to be noted that the judgment in this case, awarding the writ of *mandamus,* not only required the appellee as gen-

eral superintendent of police of the city to re-instate appellant in his position as foreman of the repair shop, but also "to permit, cause and allow the petitioner to receive and collect the salary, emoluments and compensation attached to said position for the service rendered by the incumbent thereof to the city of Chicago." It was certainly erroneous to award a writ of *mandamus* to compel the superintendent of police to pay a salary to the appellant, when the city council had made no appropriation for the payment of such salary.

For the reasons above stated, we are of the opinion that the circuit court erred in not holding as law in the decision of the case the propositions, submitted to it by appellee upon the trial below, and in awarding the writ of *mandamus;* and we are, therefore, of the opinion that the judgment of the Appellate Court, reversing the judgment of the circuit court without remanding the cause, is correct.

Accordingly, the judgment of the Appellate Court is affirmed.                *Judgment affirmed.*