(No. 33813.—

THE PEOPLE *ex rel.* John C. Byrnes *et al.,* Appellees, *vs.* STILLMAN J. STANARD, Director of Agriculture, *et al.,* Appellants.

*Opinion filed September 25, 1956—Rehearing denied Nov 19, 1956.*

LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and A. ZOLA GROVES, of counsel, for appellants.

MICHAEL F. RYAN, of Chncago, (RICHARD F. Mc-PARTLIN, JR., of counsel,) for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Eight original plaintiffs and three intervening plaintiffs, former civil service employees in the Illinois Department

of Agriculture, brought a *mandamus* suit in the circuit court of Cook County to compel restoration of their jobs and payment of back salaries, claiming their dismissals were in violation of applicable provisions of the State civil service laws.

The defendants, all State officers, moved to dismiss the complaints. But the court overruled the motions as to all but one of the plaintiffs, John A. McNamara. (The latter's complaint was stricken on the ground of *laches*.) After the defendants elected to stand by their motions, judgments were entered for the ten plaintiffs, with the court reserving jurisdiction as to rights to back salaries. The defendants and plaintiff McNamara appealed to the Appellate Court, where the appeals were consolidated. The Appellate Court affirmed as to all plaintiffs except McNamara. And as to him, the judgment was reversed and the cause remanded with directions to overrule the defendants' motion. 6 Ill. App.2d 441.

Before reaching the merits of the case, we must pass on a motion by the plaintiffs to dismiss the appeal, based on a contention that the defendants' petition for leave to appeal was not filed in apt time and this court is therefore without jurisdiction.

The Appellate Court order was entered on June 13, 1955. The defendants petitioned for a rehearing, and on July 5, 1955, an order was entered, signed by Justice Grover C. Niemeyer, which recited that he had considered the petition for a rehearing and ordered it denied. On August 24, 1955, the defendants asked that the July 5 order denying a rehearing be expunged, asserting that it was signed by one justice only and was therefore void. On September 6, 1955, the plaintiffs moved to amend, *nunc pro tunc*, said July 5 order. And a week later, on September 13, 1955, the Appellate Court did amend that order, *nunc pro tunc* as of July 5, 1955, to make it read as follows: "On this day in vacation during the June Term, A.D. 1955, the

Honorable Joseph Burke and Grover C. Niemeyer, Justices of said Court, having considered the petition of appellants praying for a rehearing in said cause and the said Justices being now fully advised in the premises doth order that the prayer of said petition be and the same is hereby denied." This order further recited that the previous order had been concurred in by Justice Burke, but through a clerical error was shown to have been the action of Justice Niemeyer alone.

The defendants filed their petition for leave to appeal on September 21, 1955, and the question arises as to whether it was filed within 40 days from the date the judgment of the Appellate Court became final through the denial of a petition for rehearing. (Ill. Rev. Stat. 1955, chap. 110, par. 75.) The answer to this depends upon whether the time is computed from July 5 (the date of the order signed by one justice) or from September 13 (the date of the amended order). In our opinion, the latter date is controlling, and it follows that the petition for leave to appeal was timely.

The July 5 order purported to be the action of one justice acting alone, and since the concurrence of two is necessary for every Appellate Court decision (Ill. Rev. Stat. 1955, chap. 37, par. 31,) it was void on its face. It was not validated until the order of September 13, and until then the defendants could not have asked for a further review of the case. Since the entry of a valid order denying a rehearing was essential to a further appeal, it follows that September 13 must be held to mark the beginning of the 40-day period. Otherwise, a court could, in effect, retroactively abrogate the right to seek a review of a case by causing to be spread on the record an order that was void on its face, and then, more than 40 days later, reform the same *nunc pro tunc*. Such a course would clearly be violative of the statutory provisions pertaining to this aspect of our appellate practice and procedure.

Turning next to the substantive issue, the legality of the dismissals, we first summarize the allegations of the complaints, all of which stand admitted by reason of defendants' motions to dismiss.

Prior to their dismissals in June, 1953, the plaintiffs were employed by the Department of Agriculture as "Foods and Dairies Inspectors." Having duly qualified for their positions by civil service examination, they had civil service status. Their duties consisted of inspecting and examining foods and food establishments for the purpose of enforcing food and sanitary laws.

Back in 1949, the Director of Agriculture instituted a program designed to improve and simplify the department's organizational structure. Among other things, the Division of Standards and the Division of Foods and Dairies were consolidated, the new division being called "Division of Foods, Dairies and Standards." One of the objectives of the change was to avoid duplication and better coordinate the work of "Weights and Measures Inspectors" and "Foods and Dairies Inspectors." In September, 1952, the department conducted a special training school to acquaint personnel with the administrative changes. Foods and dairies inspectors were taught to check small scales, so as to eliminate the necessity for a weights-and-measures inspector making a special trip to a food establishment being inspected by a foods-and-dairies inspector. It was determined by the Director of Agriculture and the Civil Service Commission, and the plaintiffs were so advised, that the consolidation would in no way affect their civil service status or create any new position for which an examination would be necessary. And in January, 1953, the director issued identification cards to the plaintiffs in which they were listed as "Standards Inspectors—Foods and Dairies Inspectors I" under the Civil Administrative Code.

At the 1953 session of the General Assembly, laws were passed to reflect and formalize these administrative

changes and to approve the same for fiscal, payroll and accounting purposes. As regards those provisions affecting the plaintiffs, the title of "Foods and Dairies Inspector" was changed to "Foods, Dairies and Standards Inspector," but the essential functions, duties and responsibilities of the position were not altered.

On June 20, 1953, the director advised the plaintiffs by letter that the General Assembly had abolished the position of inspector in the Division of Foods and Dairies, and because of this their connection with the State would be severed. A few days later they received separation notices in which the director told them they were "laid off" and gave the following reason: "Lay off due to legislative action and for the reason of efficiency and economy." However, the director subsequently employed noncivil service personnel under the title of "Foods, Dairies and Standards Inspector" to perform the identical duties previously performed by the plaintiffs. The latter made formal demand for reinstatement, but their demand was ignored. The instant suit was filed on September 21, 1953.

The plaintiffs contend that the minor additions to the title and duties of their civil service position did not operate to abolish the position or abrogate their civil service tenure. They assert that the actions of the defendants amount to a subterfuge to deprive them of their civil service rights. The defendants, on the other hand, argue that the legislature abolished the position, and since the plaintiffs never qualified by civil service examination for the new position, the dismissals were lawful.

We believe the plaintiffs presented a case for reinstatement. The General Assembly did not abrogate their civil service tenure, but rather ratified and confirmed that tenure. For the allegations of the complaints, which were admitted by defendants' motions to dismiss, show that the title change was made in order to conform the title, for payroll and accounting purposes, to the title conferred by

the director in his departmental consolidation and administrative reform. Moreover, it is admitted that the minor addition to the plaintiffs' duties did not change the essential character of the job. It has been held repeatedly that normal accretion of duties imposed by the passage of time and by department heads, in the interest of more efficient operations, do not create new positions or invalidate the civil service rights of the incumbents. *People ex rel. Turner* v. *Johnson,* 340 Ill. App. 171; *McArdle* v. *City of Chicago,* 216 Ill. App. 243; *McArdle* v. *City of Chicago,* 172 Ill. App. 142; *Corbett* v. *Allman,* 312 Ill. App. 484, 490-1.

The cases relied upon by defendants are ably analyzed and distinguished in the Appellate Court opinion, and further statement or elaboration is unnecessary.

Finally, as to plaintiff McNamara, the trial court sustained the defendants' motion to dismiss on the ground of *laches.* The Appellate Court reversed this portion of the trial court's judgment and remanded the case as to McNamara with directions to deny the motion to dismiss and for further proceedings. This did not dispose of the case as to McNamara, and as to him the judgment of the Appellate Court is not final and appealable. (Cf. *Cory Corp.* v. *Fitzgerald,* 403 Ill. 409, 414-5.) The appeal as to McNamara is dismissed.

The judgment of the Appellate Court as to the other plaintiffs is affirmed.

*Judgment affirmed.*