William J. Chestnut, et al., Plaintiffs-Appellees, v. William T. Lodge, Director, Department of Conservation of the State of Illinois, Maude Myers, Director, Department of Personnel of the State of Illinois, Michael J. Howlett, Auditor of the State of Illinois, and Francis Lorenz, Treasurer of the State of Illinois, Defendants-Appellants.

Gen. No. 10,632.

Fourth District.

December 13, 1966.

William G. Clark, Attorney General of the State of Illinois, of Chicago (Richard A. Michael, John J. O'Toole, and A. Zola Groves, Assistant Attorneys General, of counsel), for appellants.

Giffin, Winning, Lindner & Newkirk, James M. Drake, and Horsley, Vespa & Lott, all of Springfield (G. William Horsley, of counsel), for appellees.

CRAVEN, P. J.

The circuit court of Sangamon County, by its order in this mandamus and declaratory judgment proceeding, ordered the plaintiffs restored to positions as Park Supervisor I and Park Supervisor II in the Department of Conservation from the date of August 21, 1961. The order further provided for the payment of certain back salaries, and as a declaratory judgment determined that the layoff of the plaintiffs as a result of job abolition was illegal and void and that the plaintiffs were entitled to wages and salaries from the date of discharge to the date of ordered reinstatement.

An appeal was perfected to the Supreme Court on the ground that state revenue was involved. That Court caused the appeal to be transferred here. Our holding (62 Ill App2d 27, 210 NE2d 336 (1965)), that the Administrative Review Act provided plaintiffs with an ex-

■■■■■■■■■■

clusive remedy, was reversed by the Supreme Court of Illinois. Chestnut v. Lodge, 34 Ill2d 567, 216 NE2d 799 (1966). On remandment from that Court we now consider the merits of the controversy.

The plaintiffs, employees of the Department of Conservation of the State of Illinois in the job classifications of Park Supervisor I and Park Supervisor II, held positions under and subject to the provisions of the Personnel Code. (Ill Rev Stats 1961, c 127, pars 63b101 et seq.)

In July of 1961 the Director of the Department of Conservation, by a letter addressed to the Director of the Department of Personnel, recommended the abolition of the above positions. That letter was as follows:

"In accordance with Rule 24.2 of the Personnel Manual of Rules, I would like to recommend that the following positions in our Division of Parks and Memorials be abolished.

"The position of Park Supervisor II, including any unassigned job allocations, is to be discontinued. Present employees working on those particular job classifications are Mr. Robert Emmings, who was certified September 2, 1958, and Mr. James McMillen, who was certified May 24, 1961.

"This Department also recommends that the position of Park Supervisor I, including any unassigned position allocations, is to be abolished. Those presently employed in this category are:

| | |
|---|---|
| Louis Grampp | Certified 8/8/58 |
| William Chestnut | Certified 4/16/59 |
| Davis Garner | Certified 8/8/58 |
| Leonard B. Brantley | Certified 8/8/58 |
| Mike McClatchey | Certified 8/8/58 |
| John Jerome | Certified 8/8/58 |
| William A. Watts | Not Certified |

"The above recommendations are made as a result of a personnel survey made at the request of Governor Kerner and in accordance with the recommendations of the survey committee, the Department concurs in the recommendation of the survey group and would recommend that the classifications mentioned be permanently abolished. The committee determined that geographic assignment of these various positions and the manner in which the supervisors were functioning did not contribute to an efficient administration of the State Parks system. The job descriptions on these positions are obviously misleading in that at the present time a $150.00 per month increase is recommended for the Supervisor I level and a $210.00 per month increase for the Supervisor II level. It is obvious that the present supervisor structure in the Division of Parks is improperly classified and the assignment by geographic areas is unsound.

"The Survey Committee consisted of Mr. Rhodell E. Owens, Director, Peoria Pleasure Driveway and Park District; Mr. Kenneth R. Cougill, Director of the Division of State Parks, State of Indiana; Mr. David H. Fritz, Superintendent of Parks, Highland Park, Illinois; and Mr. Arthur L. Janura, a Technician from the Cook County Forest Preserve District organization. This Committee made other recommendations other than the abolishment of these positions but they were emphatic in their recommendation pertaining to the unstable supervisory organization within the Division of Parks.

"It is my recommendation, and I request your approval, to abolish the present positions of Park Supervisor I and II, and I am attaching Personnel

Forms 103 and request your approval of the layoff of the personnel involved.

. . .

(Signed) WILLIAM T. LODGE

. . .

Director"

This recommended abolition was approved by the Director of Personnel and the plaintiffs were each notified of their layoff because of the abolition of their positions.

The action taken by plaintiffs to contest their layoffs has been described in the previous opinions of both this Court and the Supreme Court. We now consider defendants' contention that the writ of mandamus was improvidently granted because the reorganization of the Department of Conservation resulted in actual abolition of the job categories formerly held by plaintiffs. Their position is that since there are no existing jobs with descriptions similar to those describing the former positions of the plaintiffs, the applicable statutes and rules of the Department of Personnel have been complied with and plaintiffs are without remedy.

The record conclusively demonstrates that the duties formerly assigned to the position of Supervisor I were not transferred to any other position but were eliminated; the duties formerly assigned to the position of Supervisor II were divided between the Park Custodian, certain categories of foremen within the individual parks, and a newly created position at the Department level, Executive II. The job description for Executive II includes some duties described for Supervisor II but supervisory responsibility for the newly created position encompasses the State of Illinois and is not limited to one geographic area as was formerly true with Supervisor II. This reorganization, therefore, resulted in the elimination of one

level of supervisory employees between the Director's Office and the Office of the Park Custodian and a vast change in the duties of supervisors at the remaining level. The number of field supervisory personnel responsible to the Director's Office was diminished from ten to three.

Plaintiffs, in their brief, concede that the above-described changes reorganized the Department and resulted in the abolition of their former positions.

> "The facts proved by the plaintiffs . . . showed that the Director of Conservation *initiated and carried out the abolition of plaintiffs' positions and the layoff of plaintiffs. . . .*" (Brief of Plaintiffs, p 6.) (Emphasis added.)

> "The plaintiffs' proof of bad faith in *abolishing the plaintiffs' position. . . .*" (Brief of Plaintiffs, p 12.) (Emphasis added.)

Plaintiffs contend, however, that the existence of a political motive taints this result with bad faith and thereby makes void an otherwise valid reorganization. Neither bad faith nor political motive is conceded by the defendants.

Plaintiffs cite several cases in which "bad faith" appears to be an issue relevant to the inquiry concerning the reality of the abolition of a position through a reorganization of a governmental department. Those cases do not support the proposition that the existence of a political motive alone is sufficient to void an otherwise valid and effective reorganization. In each cited case the factual situation demonstrated that the job position formerly held was still in existence subsequent to its purported abolition.

Typical of these are the cases of People ex rel. Fleming v. Geary, 322 Ill App 338, 54 NE2d 247 (1st Dist 1944), and McArdle v. City of Chicago, 216 Ill App 343.

Fleming and others who were employed as Hoisting Engineers under civil service in the city of Chicago were discharged upon the ground that their jobs were abolished. The work formerly done by them was assigned to five newly created positions which were filled by others, which were titled "Chauffeurs (when active as Hoisting Engineers on Air Compressors)." The description of duties assigned to the newly created Chauffeur position and the position formerly occupied by Fleming and the others was the same.

McArdle was employed as a Cement Tester in the city of Chicago under civil service. In the ten years in which he held the position the duties assigned to this position included the testing of all oils used for pumping machinery, the testing of brass and cast-iron castings, the testing of brick, sand, paints, varnishes and all other materials used in construction and the supervision of others who performed this type of work. In his eleventh year of employment his salary was reduced and he was discharged eventually for "lack of work" after he refused to resign under threat that charges could be brought against him. Some five years later he was notified that he was reinstated to his former position of Cement Tester, which he refused because the offered position was in a lower grade, it involved lesser duties and it carried a lesser salary than his former position. He was reinstated by the court which found that the duties he had formerly performed in the job title of "Cement Tester" had been continuously performed subsequent to his discharge by an individual who had received a title of "Chief Tester in Charge of the Testing Division" upon employment. This latter job was described as carrying the *same duties* and responsibilities which had theretofore been performed by McArdle under the title of "Cement Tester."

The above two fact situations are immediately distinguishable from the fact situation at hand and it is

readily apparent that the circumstances of discharge in those cases were improper regardless of motivation.

Plaintiffs also cite discharge cases which involve charges of misconduct or incompetence. Where there was evidence of actual incompetence or misconduct, the court sustained the order. Hacker v. Myers, 33 Ill App2d 322, 179 NE2d 404 (1st Dist 1961). Where there was claimed incompetence or misconduct, but no proof, the court reinstated the employee. Thornberry v. Civil Service Commission, 49 Ill App2d 22, 199 NE2d 436 (4th Dist 1964).

None of these cases was determined solely upon the existence or nonexistence of a political motive for discharge.

We agree that motive is relevant to an inquiry concerning the propriety or actuality of job abolition under civil service law. Where such motive is determined to exist, its effect is to reduce the amount of evidence required to establish an arbitrary or capricious discharge of an employee purportedly "for cause" or the continued existence of a job purportedly abolished. We hold, however, that the existence of political motive alone is not such evidence of "bad faith" as that phrase is used to make void an otherwise valid and legal discharge or abolition of position. "Bad faith" is a mixture of motive and result and exists where an imperfect discharge or layoff, which fails to meet the statutory tests or the requirements of the rules, appeared to be politically motivated.

There is no imperfection in the procedure used to accomplish the layoff of these plaintiffs. There has been compliance with the statutes and the regulations. The positions are concededly abolished and the reorganization is not only apparent but real. The proof of political motive, without more, is insufficient to overcome the existing presumption that the abolition is made in good

faith. O'Neill v. Fitzsimmons, 114 Ill App 168, aff'd, Fitzsimmons v. O'Neill, 214 Ill 494, 73 NE 797 (1905).

The legislature has adopted machinery which provides that civil service employees may be discharged or laid off in an attempt to obtain a more efficient government. The judicial test of the validity of a reorganization is neither the desirability of the change in organization, nor is it the motive which prompted such change.

Plaintiffs themselves have established by their proof that the statute was complied with and that the rules of the civil service commission have been obeyed. In the absence of evidence to the contrary, the writ of mandamus cannot be sustained.

The declaratory judgment of the Circuit Court of the Seventh Judicial Circuit, Sangamon County, Illinois, is reversed. This cause is remanded with directions to dissolve the writ of mandamus and enter declaratory judgment in favor of the defendants.

Reversed and remanded with directions.

TRAPP and SMITH, JJ., concur.