JOSEPH R. LEVESQUE, Plaintiff-Appellee, *v.* DANIEL WALKER *et al.*, Defendants-Appellants.

(No. 12300; )

Fourth District—December 30, 1974.

William J. Scott, Attorney General, of Chicago (Paul J. Bargiel, Assistant Attorney General, of counsel), for appellants.

Rifken & Shimeall, of Schaumburg (James F. Shimeall, of counsel), for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

This is an appeal from an order of the circuit court of Sangamon County declaring that the termination of plaintiff's employment by the State officer defendants was illegal and the entry of a declaratory judgment to the effect that plaintiff was entitled to back pay and other employment rights and benefits and ordering his reinstatement *ab initio*. On the motion of the named State officer defendants, this court entered an order staying the order of the circuit court.

Plaintiff was an employee of the Department of Aeronautics in a position classification known as Administrative Assistant III. He was at the time of his discharge in a probationary status by reason of certain position classification charges initiated by the Department and approved by the Department of Personnel.

Plaintiff was initially appointed Assistant Director of the Department of Aeronautics in 1969. That position is an exempt position by reason of the provisions of section 4d(1) of the Personnel Code (Ill. Rev. Stat. 1969, ch. 127, par. 63b104d(1)). In 1970, the plaintiff's job title was changed from Assistant Director to Administrative Assistant III. Such change was accompanied by an increase in salary. The Administrative Assistant III was at the time that the plaintiff assumed the position an exempt position. In 1972, authorized procedures were initiated to take the Administrative Assistant III classification from the exempt classification and to place it under Jurisdiction B of the State Personnel Code, and, in effect, giving the position and plaintiff as its occupant, the tenure rights provided for in the Personnel Code. At the time of this administrative action, two new positions referred to as Executive IV were created in the Department of Aeronautics and these were to be exempt positions. The Executive IV positions existed only in the organizational chart of the Department of Aeronautics and were never filled. The existence of those positions was a basis for removing Administrative Assistant III from an exempt to a protected status.

According to the testimony in this record, with the creation of the two Executive IV positions there were six executive positions in the Department of Aeronautics which in 1973 consisted of some 55 employees, including the executives. In January 1973, the governor, by an executive order, required the executive officers of departments of State government to cut back on expenditures and to follow such cutbacks by budgetary changes for the upcoming fiscal year. In the Department of Aeronautics, it was determined this would be effected by the abolition of some positions, including plaintiff's Administrative Assistant III position. In January 1973, the payroll of the Department was reduced from 55 to 49 employees. There is some confusion in this record by reason of the fact that

Administrative Assistant III was sometimes loosely referred to as a "deputy director." Eugene C. Utz, an employee of the Department of Aeronautics, testified with reference to the organizational chart of the Department, the changes that were made, the positions that were abolished, the reason for the abolition, and the consequent compliance with the order for fiscal restraints made necessary by the executive order. The record is clear that the position from which the plaintiff is a probationary employee was discharged has not been re-created and that the duties have been absorbed by other employees. Plaintiff was relieved of his duties on January 26, 1973, and placed on a leave of absence until February 28, 1973. On the latter date, plaintiff's right in the State Employees' Retirement System became fully vested. On March 3, 1973, plaintiff was notified of his layoff under an effective date of February 28, 1973. After exhausting his administrative remedies, plaintiff instituted the instant proceeding contending noncompliance with the statutes and the rules and regulations of the Civil Service Commission and further contending that his layoff was politically motivated. Prior to the issuance of the final order here under appeal, the trial court entered a temporary injunction and in the order for temporary injunction made certain findings, one of which was that the plaintiff was advised that he was being "fired" because of his prior and present affiliation with the Republican Party. The final order makes no finding with reference to such issue but rather concludes that the plaintiff was improperly severed from his position and that such severance was illegal.

Plaintiff's position as an Administrative Assistant III in the Department of Aeronautics was abolished in accordance with the procedures for abolition of positions provided for in the Personnel Code.

In *Powell v. Jones,* 56 Ill.2d 70, 305 N.E.2d 166, the Illinois Supreme Court discusses at length the due process requirements relevant to layoff of certified employees and concluded that such employees' interests in continued public employment were safeguarded by due process guarantees. However, the court concluded that the requirement of due process under such circumstances is "necessarily proportional to the weight of that interest and balancing it against the counter-vailing interests of society in effective and efficient governmental operation." In the course of its opinion in *Powell,* the court did note and emphasized that the certified employees there involved, fully protected by tenure, did not claim political motivation or infringement of freedom of speech in connection with the layoff and that its holding in *Powell* should not be interpreted as indicative of an opinion as to the validity of layoffs in cases where such issue might be raised.

Such issue is clearly raised in this case in the pleadings and by the

evidence. It cannot be said that the evidence compels the conclusion that the abolition of this position was motivated solely out of politics. It can be said that the position was abolished in compliance with the statutory scheme for abolition of position.

In *Chestnut v. Lodge,* 77 Ill.App.2d 281, 288, 222 N.E.2d 36, in a case involving abolition of fully protected, as distinguished from probationary, positions, we noted:

"We agree that motive is relevant to an inquiry concerning the propriety or actuality of job abolition under civil service law. Where such motive is determined to exist, its effect is to reduce the amount of evidence required to establish an arbitrary or capricious discharge of an employee purportedly 'for cause' or the continued existence of a job purportedly abolished. We hold, however, that the existence of political motive alone is not such evidence of 'bad faith' as that phrase is used to make void an otherwise valid and legal discharge or abolition of position. 'Bad faith' is a mixture of motive and result and exists where an imperfect discharge or layoff, which fails to meet the statutory tests or the requirements of the rules, appeared to be politically motivated.

There is no imperfection in the procedure used to accomplish the layoff of these plaintiffs. There has been compliance with the statutes and the regulations. The positions are concededly abolished and the reorganization is not only apparent but real. The proof of political motive, without more, is insufficient to overcome the existing presumption that the abolition is made in good faith. *O'Neill v. Fitzsimmons,* 114 Ill.App. 168, aff'd, *Fitzsimmons v. O'Neill,* 214 Ill. 494, 73 N.E. 797 (1905)." 77 Ill.App.2d 281, 288-289.

In this case, as in *Lodge,* there is an allegation of political motive, and there is testimony by the plaintiff that his position was abolished because of political considerations. The evidence is far from conclusive upon that issue and, as in *Lodge,* is clearly insufficient to overcome the existing presumption that the abolition is made in good faith and in keeping with the order for fiscal restraint imposed upon the Department of Aeronautics by the executive order. Accordingly, the judgment of the circuit court of Sangamon County reinstating the plaintiff to his position must be, and the same is, reversed.

Judgment reversed.

SMITH, P. J., and SIMKINS, J., concur.