JOHN E. ALTMAN *et al.*, Plaintiffs-Appellees, *v.* THE HEALTH AND HOSPITALS GOVERNING COMMISSION OF COOK COUNTY, Defendant-Appellant.

First District (2nd Division)    No. 79-2121

Opinion filed December 2, 1980.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and Frank J. Oles, Assistant State's Attorneys, of counsel), for appellant.

Lester Asher, Marvin Gittler, and Joel D'Alba, all of Chicago (Asher, Goodstein, Pavalon, Gittler, Greenfield & Segall, Ltd., of counsel), for appellees.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Plaintiffs, 83 former employees of defendant Health and Hospitals Governing Commission of Cook County (the Commission),[1] brought this action seeking reinstatement of employment. After a bench trial, the court made several findings of fact and concluded the Commission, arbitrarily and in bad faith, laid off plaintiffs. The court then awarded plaintiffs back pay and ordered their reinstatement. On appeal, the Commission raises two issues: (1) whether the trial court's findings are against the manifest weight of the evidence; and (2) whether plaintiffs were afforded hearings which satisfied due process of law requirements.

On March 27, 1978, plaintiffs were notified that they would be laid off "due to lack of funds," effective April 7, 1978. Plaintiffs are tradesmen who were "merit employees" working in the Building and Grounds Departments at Oak Forest and Cook County Hospitals. These health care facilities were operated by the Commission pursuant to the County Hospitals Governing Commission Act (Ill. Rev. Stat. 1977, ch. 34, par. 5011 et seq.).

On April 18, 1978, plaintiffs filed this action. Count I of the second amended complaint alleges the Commission's March 22, 1978, resolution authorizing a reduction in expenditures and a layoff of employees was not required because the Cook County Board of Commissioners appropriated increased funds for fiscal year 1978 which were sufficient to continue plaintiffs' employment. Therefore, plaintiffs allege, their layoffs were in bad faith. Count II states plaintiffs have a constitutionally-protected property interest in their continued employment sufficient to require plenary hearings regarding layoffs. Defendants answered that its total funding for fiscal year 1978 was insufficient to meet all expenses in its original proposed 1978 budget, and it therefore exercised its discretion and reduced budgeted expenditures by, inter alia, reorganizing its construction program and laying off plaintiffs. Defendants also respond that plaintiffs had access to adequate hearings.

At trial, several plaintiffs testified as to the nature and duties of their former employment, their years on the job, and the wages and benefits

---

[1] Effective November 30, 1979, the Commission's enabling statute was repealed by the County Hospitals Act (Ill. Rev. Stat., 1979 Supp., ch. 34, par. 5011 et seq., as amended by Pub. Act 81-1197, effective November 30, 1979) and, according to appellant's brief, the County of Cook became its successor in interest.

they received. Workers in the following categories were given notices of a layoff on March 27, 1978: carpenters, painters, plasterers and lathers, plumbers, bricklayers, electricians, and steam fitters. A glazier was also laid off. However, not all tradesmen were laid off.

The April 7 layoff notices indicated the layoff was "due to a lack of funds" and that any recalls would follow the Commission's Personnel Policy and Procedures Manual. Some of the laid off employees requested and were given hearings to contest the procedures used in their layoffs. The scope of these hearings did not extend to inquiry regarding the justification for the layoffs. Four employees at the Oak Forest Hospital were subsequently recalled.

Plaintiffs also adduced testimony that Thomas Quilty, the mechanics supervisor at Cook County Hospital, told plaintiffs Gary Ellinger and John Crocco that all painters and bricklayers would be laid off in order to eliminate the foremen of those shops. Forty-two tradesmen were employed in those shops.

Plaintiffs introduced various exhibits which included Commission purchase orders for services performed by subcontractors. These services paralleled, in many cases, the work previously performed by the civil service plaintiffs. The purchase orders indicated the subcontracted services were performed on an as-needed basis throughout the next 18 months at both facilities. A major renovation of a building at Oak Forest Hospital was accomplished through subcontracted work, although that work was not let by the Commission.

Testimony indicated plaintiffs were not explicitly told they had a right under Commission policy to request transfers to other positions at the hospitals. Nontrade job positions were subsequently filled with new employees.

Defendants produced the testimony of James G. Haughton, the Commission's executive director. He testified that the Commission received its funds from patients and third-party payers. The balance of its funds is provided by the Cook County Board of Commissioners (the Board). The Commission's budgets are set and approved by the Board. The Board approved a 1978 budget which was $18 million less than what the Commission requested. Haughton advised the Commission of that fact and it passed a resolution, No. 78-HHGC-50, authorizing him to make reductions in budgeted expenditures. The reductions were to be made with the object of maintaining patient care quality. Hospital directors were told to submit reduction proposals. One of those proposals included a layoff of plaintiffs. Haughton approved that proposal, among others.

Members of the Commission also testified that they were apprised of the financial crisis and that an expected $8 to $10 million revenue shortfall

necessitated cutbacks. They then voted for the above numbered resolution.

John DiLisi, director of the Building and Grounds Department at Cook County Hospital, testified that Thomas Quilty had no authority to lay off any employee. He also stated that after the layoff several contracts were let for services never previously performed by plaintiffs.

Robert Landsman, an independent accountant, testified that he reviewed the proposed budget and anticipated shortfall with members of the Commission after his firm had conducted a hundred-hour examination of the Commission's finances. Defendant then submitted to the court various exhibits in support of its testimony.

After argument of counsel the trial court orally stated its findings:

> "The evidence clearly showed that the members of the Commission believed that they were going to fall short of their anticipated budget by several million dollars, and that some budget cuts would have to be made. The members desired to make cuts in areas that would least effect patient services. That is, the trades involved in construction and maintenance.
>
> Decisions regarding layoffs were based on seniority lists as mandated by the merit system and notices were duly sent. None of these procedures were seriously contested by plaintiffs."

The court went on, however, to find that defendant failed to answer plaintiffs' claim that some in-house tradesmen could have been retained on an as-needed basis, rather than hiring outside contractors. The court surmised that such retentions "might actually have saved the defendant a greater sum of money," and furthermore, that at least some subcontractors charged an hourly cost greater than the in-house tradesmen. The court found that the only logical reason for the extensive layoffs was to get rid of a few senior foremen. It then concluded the evidence shows bad faith.

The court held plaintiffs were entitled to, but wrongfully denied, plenary hearings to challenge the reason for their layoffs, and that the layoffs were really intended as terminations. Plaintiffs were ordered reinstated with back pay, benefits, and other conditions of employment.

## I.

Defendant claims the trial court's findings are against the manifest weight of the evidence. It argues plaintiffs failed to rebut the legal presumption that the Commission acted in good faith and with reasonable exercise of discretion. Absent such a rebuttal, defendant concludes its action in approving the layoffs is beyond judicial evaluation.

■■ Plaintiffs do not contest here the Commission's authority to order

layoffs due to lack of work or funds. Plaintiffs allege the reason for their layoffs was neither. They contend the Commission acted in bad faith. "Bad faith" is a "mixture of motive and result." (*Chestnut v. Lodge* (1966), 77 Ill. App. 2d 281, 288, 222 N.E.2d 36, *appeal denied* (1967), 35 Ill. 2d 630.)[2] An analysis of evidence relative to both is therefore appropriate.

■■ The record discloses no evidence of bad faith motive chargeable to the Commission. Commission members testified that they voted for the resolution directing a reduction in expenditures because they were concerned about the anticipated $8 to $10 million shortfall of revenue. They wanted to maintain patient services. Physical plant maintenance and construction expenditures were therefore a logical area to address reductions. The trial court's initial finding is consistent with this conclusion. The trial court, however, subsequently focused upon evidence that a supervisor indicated in conversation with two plaintiffs that all painters and bricklayers would be laid off to "get at" the foremen of those shops. Uncontroverted testimony indicates that the supervisor was without authority to order such a layoff. Furthermore, even an "established vendetta" of plaintiffs' immediate supervisor is insufficient to establish that those in authority made a bad faith layoff. (*Juergensmeyer v. Bensinger* (1972), 7 Ill. App. 3d 698, 699, 288 N.E.2d 519.) Therefore, no bad faith motive has been shown.

The manifest weight of the evidence also indicates no bad faith result. Plaintiffs contend the layoffs were ordered to remove a few foremen who drew the ire of a supervisor. The layoffs at issue affected 83 tradesmen in eight trades. Approximately 500 other employees were laid off at the same time. We find it difficult to believe layoffs of such magnitude can be traced to a relatively minor personnel problem. Rather, the evidence clearly shows that had plaintiffs been retained in their former positions, their wages and benefits would have amounted to $1,869,634. It is uncontested that maintenance and construction work was reduced under the 1978 budget. Contracts let to outside companies who arguably performed some of the services previously done by plaintiffs amounted to $537,060.30. A $1,332,574 reduction in maintenance and construction expenditures was accomplished after the layoffs. This savings does not include reduced costs for materials supplied by outside contractors. Thus, notwithstanding the fact that unit costs for some trades might have been lower if performed by plaintiffs, the Commission achieved substantial reduction in maintenance and construction costs. The Commission's stated motive for the layoffs resulted in savings. Such action does not amount to "bad faith."

■■ The uncontested motive and result of the Commission's action was to

---

[2] For a definition of "bad faith" see also Black's Law Dictionary 127 (5th ed. 1979).

save money. It was not within the trial court's authority to second guess the Commission on how it could effect a savings. (*People ex rel. Behnke v. McLaughlin* (1935), 362 Ill. 274, 277, 199 N.E. 810.) The question for the trial court was whether bad faith was evident (see *City of Chicago v. People ex rel. Byrne* (1904), 114 Ill. App. 145, 155), and absent that evidence a presumption of good faith survives. See generally *Levesque v. Walker* (1974), 24 Ill. App. 3d 828, 831, 321 N.E.2d 278; *Chestnut v. Lodge* (1966), 77 Ill. App. 2d 281, 288-89; *O'Neill v. Fitzsimmons* (1904), 114 Ill. App. 168, 171-72, *aff'd* (1905), 214 Ill. 494, 73 N.E. 797.

■■ Finally, we believe plaintiffs' reliance upon *People ex rel. Byrnes v. Stanard* (1956), 9 Ill. 2d 372, 377, 137 N.E.2d 829, and *People ex rel. Jacobs v. Coffin* (1918), 282 Ill. 599, 610, 119 N.E. 54, is inapposite. These cases involve the replacement of individual civil service employees through the uncontested use of subterfuge. Each non-civil-service replacement employee performed duties identical to those performed by his predecessor. Each employer's apparent aim was to terminate a particular employee. Absent these facts, neither case requires a finding of bad faith here. Accordingly, the trial court's finding of bad faith is against the manifest weight of the evidence.

## II.

Defendants also contend the trial court erred when it held plaintiffs were unconstitutionally denied a plenary hearing during which they could challenge the grounds for their layoffs.

Plaintiffs concede the Commission's conduct did not result in any violation of a substantive due process right. Rather they contended at trial that their job layoffs were predicated upon bad faith and abuse of discretion. They point to a provision in the Commission's enabling statute as requiring a full hearing upon their discharge. (See Ill. Rev. Stat. 1977, ch. 34, par. 5026.) They argue that their layoffs are equivalent to discharges and that because they were not permitted to challenge the basis of those layoffs during the hearings afforded them, their statutory right to a full hearing has been denied. Furthermore, they rely upon several cases for the proposition that their expectation in continued employment amounted to a property interest which could not be taken in the absence of a full hearing. See generally *Board of Regents v. Roth* (1972), 408 U.S. 564, 577-78, 33 L. Ed. 2d 548, 560-62, 92 S. Ct. 2701, 2709-10; *Young v. Brashears* (7th Cir. 1977), 560 F.2d 1337, 1340; *Mims v. Board of Education* (7th Cir. 1975), 523 F.2d 711, 715.

Plaintiffs' cases are inapposite. Plaintiffs were laid off in good faith. No discriminatory purpose is alleged. They were not "discharged" as that term is used in section 16 of the County Hospitals Governing Commission Act (Ill. Rev. Stat. 1977, ch. 34, par. 5026). That act contains virtually the

same language as did the statute in *Fitzsimmons v. O'Neill,* where the supreme court stated:

> "That section refers to cases where an officer or employee is removed for some reason personal to himself. His right to be heard in his defense upon written charges, \* \* \* implies that the cause of his removal is some dereliction, or neglect of duty, or incapacity to perform duty, or some delinquency, which affects his fitness for the position occupied by him. The provision in question does not apply to a case where the incumbent is dismissed for want of funds \* \* \*." (214 Ill. 494, 503.)

The Commission provided for a hearing allowing laid off employees to challenge the procedure for layoffs. The statute requires no more.

■■ Finally, although plaintiffs may have a constitutionally-protected property interest in their expected employment, that interest is adequately protected by the hearing provided them. (*Powell v. Jones* (1973), 56 Ill. 2d 70, 82, 305 N.E.2d 166.) In *Powell v. Jones,* our supreme court assessed the protections constitutionally mandated in *Perry v. Sindermann* (1972), 408 U.S. 593, 33 L. Ed. 2d 570, 92 S. Ct. 2694, and *Board of Regents v. Roth,* and concluded that in the case of layoffs, as distinguished from discharges, a plenary hearing was not required. "It would be virtually impossible for State government to function without substantial confusion, delay and uncertainty if each certified employee were entitled to receive a plenary hearing prior to a lay-off." (56 Ill. 2d 70, 82.) Plaintiffs in the instant case were afforded an opportunity to challenge the procedure governing their layoffs. Although the scope of that hearing was limited and did not extend to challenges of the Commission's discretionary acts, plaintiffs were entitled to no more.

In accordance with the aforementioned reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.

STAMOS and HARTMAN, JJ., concur.