Fred Thornberry, Plaintiff-Appellee, v. Civil Service Commission of the State of Illinois, and the Department of Financial Institutions of the State of Illinois, Defendants-Appellants.

Gen. No. 10,532.

Fourth District.

June 11, 1964.

William G. Clark, Attorney General, of Chicago (William C. Wines, Raymond S. Sarnow, and A. Zola Groves, Assistant Attorneys General, of counsel), for appellants.

Scott and Sebo, by Walter J. Sebo, of Canton, for appellee.

CROW, P. J.

The appellants appeal from the judgment of the Circuit Court of Brown County, which Court reversed a decision of the Civil Service Commission of the State of Illinois, discharging the plaintiff, Fred Thornberry, from the service of the Department of Financial Institutions of the State of Illinois. The Circuit Court

judgment ordered plaintiff reinstated to his position, a certified employee under the Personnel Code, State of Illinois.

It is appellant's theory that the findings and decision of the Civil Service Commission discharging the plaintiff are amply supported by competent evidence, and should be affirmed.

On January 24, 1962, the Director of the Department of Financial Institutions instituted discharge proceedings against the plaintiff, Fred Thornberry, an Examiner II, based upon the following written charges:

"Travel vouchers and examination reports submitted are not in accord as to location and date of examination made. Days reported as making examinations show frequently only 3, 4, 5 and 5½ hours worked, including travel time. Travel vouchers repeatedly show days spent at home to work on reports, which were not authorized by his supervisor. Other evidence indicates employee's travel time vouchers are incorrect and that he uses State's time for personal use."

The Civil Service Commission from the evidence taken before a Hearing Officer arrived at the following conclusions:

"The Respondent, Fred Thornberry, as charged herein, did utilize State time for personal use and to engage in personal endeavors and submitted incorrect travel vouchers (Petitioner's Exhibits, Nos 1 and 2) and is, therefore, guilty of failure to perform properly his duties as a Financial Institutions Examiner II.

"By reason of the finding of fact and guilt herein, cause exists for the discharge of Respondent, Fred Thornberry, from his position as Financial Institutions Examiner II and as an employee of Petitioner herein."

24

These conclusions were based on certain findings, Nos 15, 16, and 17, by the Commission and solely relied upon by the appellant to sustain the conclusions. These findings are as follows:

"15. John Frederick Moorman, a resident of Mt. Sterling, Illinois, was called as a witness on behalf of Petitioner, Department of Financial Institutions of the State of Illinois. He testified that on December 11, 1961, he saw Respondent emerge from his (Respondent's) home at Versailles, Illinois, at approximately 9:30 a. m. Respondent entered his automobile and after stopping at the post office and local diner, proceeded from Versailles to the Court House at Jacksonville, Illinois. The witness further testified that Respondent remained in Jacksonville, Illinois, approximately two and one-half to three hours, returning to Versailles about 1:30 or 2:00 p. m. on the aforesaid date. Respondent did not recall going to Jacksonville, Illinois on December 11, 1961. Travel vouchers submitted by Respondent to the Department of Financial Institutions relative to December 11, 1961, bear the notation 'Ice on Roads. No Travel.' Witness Moorman further testified that on December 14, 1961, he again observed the activities of Respondent. On that date, Respondent proceeded from Versailles to the Court House at Pittsfield, Illinois, where he remained approximately thirty minutes. Respondent then returned to Versailles, arriving about 2:15 p. m. Respondent did not recall being in Pittsfield on December 14, 1961, but asserted that he did, on that date, go to Winchester and Jacksonville, Illinois. Travel vouchers submitted by Respondent to the Department of Financial Institutions, relative to December 14, 1961, show travel from Versailles to Winchester and Jacksonville.

25

"16. William McCartney, a resident of Pittsfield, Illinois was called as a witness on behalf of Petitioner, Department of Financial Institutions. Witness McCartney testified that on August 1, 1961, he held the position of Chairman of the Board of Review of Pike County, Illinois. On the aforesaid date, Mr. McCartney was present in the Pike County Court House; he testified that Respondent came into the Supervisor of Assessment's Office shortly after 10:00 o'clock a. m. and engaged him in conversation relative to the assessment of real estate owned by one Dennis. The land in question had no connection with any cemetery situated in Pike County. Respondent admits to being in Pittsfield on August 1, 1961, and appearing before the Board of Review on behalf of said Dennis, a personal friend of Respondent. Upon leaving Pittsfield, Respondent proceeded to Clayton, Illinois. As evidenced by that part of Petitioner's Exhibit No 2, which relates to the activities of Respondent on August 1, 1961, and by Respondent's testimony, the State of Illinois was charged for the meal in question on the aforesaid date despite the fact that Respondent's activities in Pittsfield, Illinois, on behalf of his friend, Dennis, were admittedly of a personal nature.

"17. On cross-examination, Respondent averred that mileage reported by him was true and correct, based upon speedometer readings. Examination of the mileage figures discloses no instance in which the number of reported miles does not end in either a five or a zero. Respondent testified that the mileage reported was sometimes an 'understatement' but denies that such figures were ever 'overstated.' He testified, in explanation, that 'it was easier to add up those things with a zero and five, than it was in odd numbers.' "

26

Prior to the taking of testimony, the plaintiff, by his attorney, moved to strike the written charges and, particularly, the sentence that read "travel vouchers and examination reports submitted are not in accord as to locations and date of examination made," for the reason that it fails to specify with any degree of accuracy the charges that Thornberry is compelled to face and defend. The ruling was reserved by the Hearing Officer on this motion and the record does not show that it was ever affirmatively passed upon, although by implication it might be inferred that the hearing officer overruled this motion.

The plaintiff alleges in his complaint for review, filed in the Circuit Court of Brown County, that the defendant Civil Service Commission was heretofore created and was at the time herein mentioned and is presently operating by authority of the provisions of the "Personnel Code" of the State of Illinois (ch 127, §§ 63(b), 101 to 63(b) 118, Smith-Hurd Ill Rev Stats); that prior to the 1st day of July, 1958, plaintiff was employed by the office of the Auditor of Public Accounts as an Examiner in the Cemetery Care Division and that on or about said date the Cemetery Care Division aforesaid was transferred into and became a part of the Department of Financial Institutions, one of the defendants herein, pursuant to the laws of the State of Illinois and by such transfer the plaintiff became an employee of the Department of Financial Institutions; that plaintiff subsequently was certified pursuant to the provisions of the aforesaid Personnel Code as a Financial Institution Examiner I and as such became subject to the provisions of the Personnel Code. That since the date plaintiff was so certified as a Financial Institution Examiner I up to and including the present time, he was and is entitled to all rights granted to employees covered by said Personnel Code; that the decision by the defendant Civil Service

27

Commission is erroneous, illegal and void for the following reasons (not set forth in full):

"That the defendant Civil Service Commission did not have jurisdiction over plaintiff or the matter in controversy for the reason that the alleged written charges filed were inadequate to properly apprise plaintiff of the charges he was called upon to answer.

"Said decision was and is against the manifest weight of the evidence and unsupported by evidence introduced at said hearing.

"That no evidence was introduced at said hearing showing or tending to show that plaintiff was guilty of any breach of duty or offense justifying his discharge or that any lawful or reasonable cause existed therefor.

"That the record herein clearly establishes that the proceedings to discharge plaintiff were politically motivated and in direct violation of the spirit and letter of the Personnel Code."

Without detailing all of the testimony taken before the Hearing Officer, it appears that the plaintiff was employed by the Auditor of Public Accounts as an examiner in the Cemetery Care Division in May 1956; on July 1, 1958, the Division was made a part of the Department of Financial Institutions and placed under the Department of Personnel. Plaintiff served six months, as required by the act, as a probationary employee and on March 30, 1959, was certified as an Examiner I under the Personnel Code. On March 3, 1961, the plaintiff was promoted to Examiner II at an increase in pay. On January 22, 1962, plaintiff was discharged from his position. From the date of his employment in May of 1956, to his discharge January 22, 1962, plaintiff's job was the same, unchanged in

any great particulars. Until January 20, 1962, the Director of Financial Institutions was Conrad Becker, appointee of Republican Governor Stratton. On January 20, 1962, Joseph E. Knight, appointee of Democratic Governor Kerner, replaced Becker, whose term expired. On January 22, 1962, plaintiff was discharged by a letter from Joseph E. Knight, Director of Financial Institutions, and Personnel Separations forms, signed by said Director. Raymond Turner, County Chairman of the Brown County Democrat Central Committee, and John Moorman, Democrat Precinct Committeeman, each took part in the proceedings leading to the plaintiff's discharge.

John Frederick Moorman, an employee of the Illinois Commerce Commission, testified that he was assigned to the job of following the plaintiff, Mr. Thornberry, by the Democratic County Chairman, Raymond Turner, of Versailles, that he, at the time the investigation was made, was a Democratic Precinct Committeeman, that the only thing he found material to the case was to pinpoint dates and times for Mr. Thornberry to build up a case against him, that he (Moorman) was not paid by anyone to do this job, that Mr. Turner was instrumental in getting him (Moorman) his job as an Investigator with the Illinois Commerce Commission, that he (Moorman) did not believe Mr. Turner was employed by the State at that time, that he was paid by the State at the time of these investigations, that checking and following Mr. Thornberry was not part of his job, he did this more or less out of a sense of obligation to Mr. Turner, and he didn't at the time regard this investigation as politically motivated by Mr. Turner, but now he would.

From plaintiff's testimony, it appears that he was an experienced examiner. The procedure and methods in examinations was unchanged from the time plaintiff started to the date of his discharge. The main purpose

29

of his job was to audit the books and records of small cemetery associations in his district. On Friday or Saturday of each week plaintiff received from two to four assignments in the mail from Springfield. His instructions were to complete the assignment as expeditiously as possible and work until the job was done. The procedure he followed, specifically with reference to working certain hours per day, was procedure taught to him and approved by his supervisor. He had never been advised that he was to work an 8 to 5 day, or any other specified hours. He was told he was to work at hours convenient to the trustees of Cemetery Associations he was examining. There were approximately 85 to 90 cemetery associations in his district. The books and records of these associations, except two, are kept in the home of an officer of the association and the examination takes place in that person's home. The officer in charge of those records is otherwise employed, farmers, bankers, housewives and the examinations are conducted in the home, working in the kitchen or living room. Appointments could not always be made between 8 and 5 and it was sometimes necessary to make the audit in the evening. The plaintiff was also required to seek registration of cemeteries and conduct audits outside of his district on special assignment. Upon receipt of an assignment, on Friday evening or Saturday morning, plaintiff would check over his assignment for the coming week and on Monday morning he would make appointments by phone to complete the audit. The facts were transcribed onto a scratch sheet at the trustee's home and later placed on the official papers from the scratch sheets, at plaintiff's home. The record conclusively shows that plaintiff performed his job in a manner not only authorized by his superior, but approved by his superiors and set up by them.

Raymond Turner, one of the witnesses called by the appellant, stated that he had a conversation with Mr.

Moorman relating to Fred Thornberry, that he told Moorman that the citizens of Versailles Township, the taxpayers, were dissatisfied with his duties as a State employee, his being around the Village of Versailles, on State payroll, and too much time spent in Versailles Township, that Mr. Moorman was not paid anything by him for tailing, that Moorman did not ask why when asked to follow Thornberry and make notations of his whereabouts, and that his position with the State of Illinois was not under the Department of Financial Institutions.

Leslie R. Seligman, of Robinson, Illinois, a witness called by the appellant, stated that he was employed in the Department of Financial Institutions, Cemetery Care Division, since February, 1958, that his present assignment is Assistant to Ernest S. Lair, Superintendent of Cemetery Care Division in Chicago and Springfield districts. He stated that plaintiff's job could not be performed between the hours of 8 and 5.

The record shows that the defendant, Department of Financial Institutions, failed to file a work schedule covering plaintiff's employment. The Personnel Code provides for the Department of Personnel to make rules and regulations pertaining to the various departments under its jurisdiction and that they shall make rules "For positions in the State service subject to the jurisdiction of the Department of Personnel with respect to conditions of employment . . . (2) For hours of work, holidays and attendance regulations in the various classes of positions in the State services . . ." The appellee argues that under this provision the Department Director had the duty to establish and file with the Director of Personnel a schedule covering the work hours of plaintiff.

The appellee introduced in evidence a copy of a memorandum from the Springfield office, John Berry, Acting Supervisor, Cemetery Care Division, dated

31

December 13, 1961, to All Cemetery Care Division Fieldmen, as follows:

"I talked to Mr. Becker this morning about work for all Fieldmen the rest of this year. All examinations are made for this year that are due, except the files that you may now have on hand; therefore, if you have any reports that are not completed, please finish them and return them to this office as soon as you can.

"Travel expense is curtailed for the rest of this year. Mr. Becker said to not go out on registrations. Stay at home, finish your work, clear your files and prepare to start your regular examination work January 2, 1962.

"Mr. Becker said it would be a good time to study the law and added amendments."

. . . . . .

"You will all get more or less of a vacation for the remainder of the year. This is to make up for you the extra time you have worked, such as after night travelling and extra hours you have put in on examinations. Should an emergency come up, I will contact you. Send in your itinerary so I will know where you will be."

. . . . . .

The appellee cites the case of Burke v. Civil Service Commission (1963), 41 Ill App2d 446, 190 NE2d 841, in which case they refer to the case of Hacker v. Myers, et al. (1961), 33 Ill App2d 322, 179 NE2d 404, in which latter case the Court said:

"The purpose of the Civil Service Act is to ensure a competent civil service for governmental bodies, and in furtherance of that end employees are assured of tenure in their positions provided they

meet certain qualifications. They cannot legally be discharged for political or capricious reasons, but neither can they claim the right to be continued in their positions if they are incompetent."

And in the Burke case the Court said:

"The Personnel Code itself provides that no employee under the jurisdiction of the Code shall be removed or discharged 'except for cause'. It is the Court's opinion, shared most certainly by the legislature, that no employee shall be discharged for capricious or political reasons. . . .

"The Court is hesitant to interfere with the orderly process in the employment and discharge of personnel. This hesitancy should not, however, be misconstrued. The rights of employees protected by the Personnel Code should be zealously guarded by the Court. If the complaint is a genuine one there can be no reason for not proving the same at the hearing before the Civil Service Commission. It should be noted that there is no contention made that plaintiff was insubordinate, nor was there any proof, nor did the Commission find that he was in wilful violation of the order. . . ."

■ ■ In our opinion the charges set forth herein were too general for respondent Thornberry to meet and the motion to strike those charges should have been allowed by the Trial Examiner. If the Department wanted to make detailed charges so far as dates and occurrences were concerned, that should have been allowed by amendment or by new charges filed.

It is interesting to note that the Trial Judge in a brief memorandum to the attorneys before he entered the judgment order stated that a thorough consideration of all the facts indicates the plaintiff had vio-

lated no condition of his employment, that no fault was found with the quality or quantity of any of his work. The nature of his employment was unusual in that there were no fixed hours of employment and no regular place provided by his employer. Further, it was necessary for him to contact employees of Cemetery Associations at a time and place convenient to them rather than himself. This situation readily accounts for all the alleged irregularities contained in the record of the case.

■ Another matter we cannot overlook is the evidence indicating that this investigation and the charges following were politically motivated. It has been the decision of our Courts that no employee under the Personnel Code should be discharged for capricious or political reasons. The record shows that the plaintiff filed some 136 travel vouchers covering six years and eight months, approximately 600 audits of cemetery associations and numerous registrations. His record is remarkably free of mistakes or errors.

■ The decision of the Civil Service Commission is against the manifest weight of the evidence, and the Circuit Court of Brown County properly reversed the decision of the Commission.

The judgment of the Circuit Court of Brown County is and should be affirmed.

Affirmed.

SPIVEY and SMITH, JJ., concur.