Robert M. Davis, Plaintiff-Respondent, v. Civil Service Commission of the State of Illinois, and the Department of Financial Institutions of the State of Illinois, Defendants-Petitioners.

Gen. No. 64–29.

Second District.

April 20, 1965.

William G. Clark, Attorney General, State of Illinois, of Chicago (Richard A. Michael, John J. O'Toole, A. Zola Groves, and Raymond S. Sarnow, Assistant Attorneys General, of counsel), for defendants-petitioners; Walter J. Sebo of Scott and Sebo, of Canton, for plaintiff-respondent.

MR. JUSTICE MORAN delivered the opinion of the court.

This is a proceeding brought under the Administrative Review Act to challenge the validity of plaintiff's discharge from his employment with the Department of Financial Institutions of the State of Illinois. The appeal was originally filed in the Appellate Court for the Third District, but has been transferred to this district for decision because of the fact that one of the Justices of the Third District was the trial judge in the case.

The plaintiff went to work for the State Auditor of Public Accounts on December 15, 1957. He worked as an examiner in the Cemetery Care Division. On July 1, 1958, this division was incorporated into the newly formed Department of Financial Institutions, and plaintiff continued to work for that department as an examiner in the Cemetery Care Division. In this

position, the plaintiff was covered by the Personnel Code, Ill Rev Stats c 127, § 63(b)111, and could be discharged only for cause.

The principal function of an examiner in the Cemetery Care Division is to audit cemetery associations which are licensed by the State and entrusted with care funds or trust funds, to see that these funds are properly used and invested and that the books of the associations are properly kept.

The plaintiff was elected Town Clerk of the town of Canton in April of 1957, and served in that position until March of 1961. His main duty in that job was to keep the minutes of the meetings of the Town Board of Auditors. These meetings were held once a month, commencing at about 2:30 p. m. and lasting anywhere from 30 minutes to an hour and a half. Plaintiff attended all or most of the meetings of the Board during his term of office, which was contemporaneous with his employment by the State of Illinois. From the record, it appears that his superiors in the Division of Cemetery Care were aware of his position as Town Clerk, and that no objection was ever raised. In fact, it does not appear that the matter was ever discussed. There is no evidence that the plaintiff made any effort to conceal the fact that he did have this additional employment as Town Clerk.

Plaintiff ceased his employment as Town Clerk on March 29, 1961. Ten months later, on January 22, 1962, he was discharged from his position in the Division of Cemetery Care. He requested a hearing before the Civil Service Commission, and a hearing was held before a hearing examiner of that Commission. The formal charges against the plaintiff contained various allegations as to which no evidence was offered at the hearing, and other allegations as to which the Commission made no findings. We will

confine ourselves to the findings which the Commission did make which were as follows:

"15. The Respondent held the position of Town Clerk for the Town of Canton, Illinois, from April, 1957 until March, 1961 (R–298–294). The Board of Town Auditors, Town of Canton, Illinois held monthly meetings during the aforesaid period, all of which were attended by Respondent (R–94). Such meetings would commence "sometimes after 2:30 in the afternoon" and were from one-half hour to forty-five minutes in duration (R–294). Respondent was compensated for his attendance at such meetings (R–336). Such time as was utilized by Respondent in attendance at such meetings should properly have been devoted to the discharge of his duties as Financial Institutions Examiner 1, Cemetery Care Division.

"16. As evidenced by that part of Petitioner's Exhibit No. 5 which relates to the activities of Respondent on March 28 through 31, inclusive of 1960, Respondent represented through travel vouchers submitted to the Department of Financial Institutions that he had proceeded on March 28, 1960 from Norris, Illinois to Galesburg, Illinois in the vicinity of which he remained until March 31, 1960 at which date he returned to Norris, Illinois. Respondent executed said voucher and received payment for said period of travel (R–355).

"17. As evidenced by that part of Petitioner's Exhibit No. 11 which relates to the meeting of the Board of Town Auditors of the Town of Canton, Illinois held on March 29, 1960 in Canton, Illinois, Respondent was present at said meeting in his capacity of Town Clerk (R–356).

20

"18. The Respondent, Robert M. Davis, as charged herein, did interrupt State business to engage in personal endeavors, utilized State time for personal use, submitted incorrect travel vouchers, (Petitioner's Exhibit No. 5) and is therefore guilty of failure to perform properly his duties as a Financial Institutions Examiner 1."

The trial court reviewed the record of the proceedings before the Civil Service Commission and held that these findings were against the manifest weight of the evidence. An order was entered reinstating plaintiff to his position with back pay from the date of his discharge. The defendants have appealed from this order, asserting that there was evidence which fairly tended to support the administrative decision.

Simply stated, the Commission made just two findings which are relied upon to support plaintiff's discharge:

1. Plaintiff attended the town meetings on time he should have been devoting to his employment with the State;
2. Plaintiff submitted a travel voucher indicating that he was in Galesburg from March 28 through March 31, 1960, whereas, in fact, he attended a town meeting in Canton on March 29, 1960.

In order to determine whether these findings are against the manifest weight of the evidence, we shall briefly review what the evidence was. It is, first of all, perfectly clear that there was never any set work schedule adopted by the Division of Cemetery Care for its employees. Chapter 127, Sec 63(b)108–108(c), Ill Rev Stats, provides that all state departments shall file work schedules for their employees with the De-

partment of Personnel. However, the Department of Financial Institutions failed to do this. The evidence is also clear that it would have been difficult to lay down an exact work schedule for cemetery examiners in any case. The record shows that many, if not most of the officers of the cemetery associations who had custody of the books of the association were volunteers who had full-time employment aside from their duties with the cemetery associations. Many of the custodians of the books plaintiff had to examine were farmers, factory workers and the like who worked all day and could only be visited at night, usually in their homes, where the books were kept. Plaintiff would copy the necessary information from the books at the home of the officer of the association, and then return to his own home or to his motel to transfer the entries onto the report he filed with his superiors. It was admitted by the witnesses for the defendant that the examiners were encouraged to conduct their interviews and make their examinations at times and places which would be convenient for the officers of the associations involved. The plaintiff was furnished neither an office nor an automobile. He usually received his assignments by mail.

In view of the foregoing, we do not see how it can be said that it was incumbent upon plaintiff to be at a particular place at a particular time in connection with his state employment. From our review of the record, it appears to us that the important thing was that the job be done. The manner of doing it was, perhaps necessarily, left to the good judgment of the examiner. Prior to his discharge, there had never been any complaints about the quality of plaintiff's work. In fact, he received commendations and several raises in salary. There was no rule against outside employment, and, moreover, as previously noted, plaintiff's superiors knew of his position with the town of

22

Canton and made no objection to it. For these reasons, we feel there is no basis for the finding of the Commission that plaintiff's employment as Town Clerk was inconsistent with his duties for the State.

■ ■ As to the finding that plaintiff "submitted incorrect travel vouchers (Petitioner's Exhibit No. 5)," we interpret this to mean that Exhibit 5 was incorrect, since this is the only voucher specified in the finding. We do not know whether the use of the plural form is intended to imply that there were other incorrect vouchers, but, if it is, the finding would be invalid to that extent, because the plaintiff is entitled to know specifically the basis for his discharge. The defendants argue that, in the travel vouchers known as Exhibit 5, plaintiff represented that he had been in Galesburg from March 28 to March 31, 1960, whereas, he had attended a meeting of the Town Board in Canton on March 29. We do not know what plaintiff represented in this voucher, because its language has not been abstracted. Accordingly, the record before us does not support the conclusion that there was anything incorrect about the voucher. However, since it was a travel voucher, in which, apparently, plaintiff was seeking merely to be reimbursed for the expense involved in a trip to Galesburg, we think the voucher would be incorrect only if it were shown that plaintiff did not in fact go to Galesburg or that he did not incur the expenses. Plaintiff testified that he did go to Galesburg and did examine a cemetery association there during the period in question. He further testified that the only mileage charged was that involved in one round trip to Galesburg, and that he did not charge for the mileage involved in his trip to Canton to attend the meeting on March 29. The defendants presented no evidence to contradict this testimony of the plaintiff. If plaintiff had not gone to Galesburg and made the examination of association there, surely de-

23

fendants would have been in a position to prove this. Similarly, if plaintiff had included in his mileage claimed, the distance traveled to attend the town meeting, defendants would be in a position to prove that. Their failure to do so convinces us that plaintiff's account of the matter is correct. The finding that plaintiff submitted an incorrect travel voucher is, therefore, against the manifest weight of the evidence.

This case is very similar to Thornberry v. Civil Service Commission, 49 Ill App2d 22, 199 NE2d 436 (4th Dist 1964), a case in which the order of the trial court setting aside the discharge of another cemetery examiner was affirmed. Almost everything said by the Appellate Court for the Fourth District in that case applies to the facts before us.

Plaintiff argues that his discharge was based upon political considerations, and his testimony before the hearing examiner concerning the various conversations he allegedly had with his superiors tends to bear out this contention. We do not need to decide this point. However, since there was no legitimate cause for the discharge, we suspect there must have been reasons for it other than those specified in the formal charges.

The judgment of the lower court is affirmed.

Affirmed.

ABRAHAMSON, P. J. and CARROLL, J. concur.