(No. 26567.—
WILLIAM KENNEDY *et al.*, Appellees, *vs.* THE CITY OF JOLIET, Appellant.

*Opinion filed May 13, 1942.*

16

JAMES G. HOLBROOK, and CHARLES J. McKEOWN, for appellant.

MARTIN K. MILLER, and LONDRIGAN & LONDRIGAN, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

A judgment of the circuit court of Will county awarded the plaintiffs, seventy members of the police and fire departments of the city of Joliet, the respective differences between the salaries paid them for the period commencing July 13, 1937, and ending January 31, 1941, and the minimum salaries of $175 per month prescribed by the Policemen's Minimum Wage act and the Firemen's Minimum Wage act. The judgment in favor of seven plaintiffs included the amount claimed as salaries during a thirty-day period in January, 1941, during which they were laid off pursuant to a resolution of the city council. Many of defendant's contentions that the two minimum wage statutes transcend constitutional guaranties raise no debatable constitutional question not previously decided adversely to it. *Morgan* v. *City of Rockford,* 375 Ill. 326; *Littell* v. *City of Peoria,* 374 id. 344; *People ex rel. Gramlich* v. *City of Peoria,* id. 313; *People ex rel. Moshier* v. *City of Springfield,* 370 Ill. 541.

A stipulation of facts discloses that on July 29, 1937, sixty-six plaintiffs signed a waiver agreement expressing their understanding and agreement that the revenues of the city of Joliet did not and would not permit compliance with the statutory requirement of a minimum salary of $175 per month without a reduction in the number of employees in both the police and fire departments. The waiver agreement signed voluntarily by each of these plaintiffs recited: "And whereas, the undersigned is desirous that said number of employees be not reduced; first, because he might possibly be one of those whose services would be dispensed with or if not, the additional burden of work falling on the remaining employees would be excessive. Now, therefore, in consideration that the city of Joliet do not reduce the number of employees in said departments, the undersigned herewith waives any rights he may have acquired under and by virtue of said statutory enactment and agrees to accept payment of his present rate of salary as payment in full of all moneys due him from time to time during his employment and to waive any additional claim for salary and release the city of Joliet from any claim for difference between the salary now being paid to him, or to be paid to him from time to time, and the said statutory minimum." For approximately two years thereafter, these plaintiffs indorsed over their respective signatures each check covering their salaries as follows: "In consideration of premises set forth in agreement of July 29, 1937, and in further consideration of like waiver by certain other co-employees, the undersigned, by endorsement hereof, herewith accepts within payment as satisfaction in full of all moneys due him from city of Joliet for the one-half month period preceding the date of this check." The same constitutional question raised as to the validity of the releases has been decided adversely to defendant and does not require further consideration. *Anderson* v. *City of Jacksonville, post,* p. 44.

The only other contention requiring consideration is the legality of a so-called lay-off plan effective during January, 1941. Seven plaintiffs, Alexander Davidson, Gordon E. Greenwood, Matthew Hartford, Stephen J. Heinzel, James C. McKean, John Malloy, and Paul E. Metzger, alleged that although no charges had been preferred against them and they had previously announced their willingness to work and signified their objection to being laid off, they were prevented by their superior officers from working during the month of January, 1941. By its answer, defendant averred it was heavily indebted for moneys due over and above operating costs, setting forth the amounts due to different funds and indicating that of approximately $340,000 due in 1937 about $116,000 remained due in 1941; that during the period in controversy all available funds over and above necessary operating expenses had been applied to reduce these debts. Defendant answered further that because of inadequacy of funds and the necessity for economy, a staggered program of lay-offs in order of seniority was adopted; that it was attempting to comply with the minimum wage laws but that in order to avoid reducing the force a rotated plan of lay-offs was adopted. The applicable resolution of the city council recites that commencing January 1, 1941, due to lack of funds, the five patrolmen and three firemen last appointed to the service shall be suspended without pay for a thirty-day period; that, at the conclusion of the period, they shall return to the service and five police officers and three firemen next in order of appointment shall then be suspended for a like period, the program to be continued in rotation each thirty days until every patrolman and fireman has taken thirty days' suspension without pay, at the conclusion of which time the program shall be repeated in like rotation indefinitely until further action of the council. The stipulated facts disclose that all funds during the period which were not expended for corporate purposes or held for working

fund were applied to reduce the indebtedness amounting to $340,178.27 in 1937. Of this amount, $116,617 remained unpaid on January 1, 1941.

To obtain a reversal of the judgment to the extent it awarded seven plaintiffs additional sums covering the period of temporary lay-off under the program described, the argument is advanced that since a city has the power to abolish an office or position in good faith for purposes of economy it also has the power to suspend employees for temporary periods in like good faith for like purposes. *Fitzsimmons* v. *O'Neill,* 214 Ill. 494, holds that section 12 of the Civil Service act, providing that no employee in the classified service shall be removed except for cause, upon written charges and after an opportunity to be heard in his own defense, does not apply to removal from a position as foreman of a repair shop in a police department consequent upon the abolition of the office itself in good faith and in the interest of economy. The court observed: "We are of the opinion that section 12 of the Civil Service act has no application to a case like the present. That section refers to cases where an officer or employee is removed for some reason personal to himself. His right to be heard in his defense upon written charges, as specified in section 12, implies that the cause of his removal is some dereliction, or neglect of duty, or incapacity to perform duty, or some delinquency, which affects his fitness for the position occupied by him. The provision in question does not apply to a case where the incumbent is dismissed for want of funds, or in order to reduce expenses, and when at the time of the dismissal, as was the fact in the case at bar, he has notice of that fact. * * * It certainly would be a harsh doctrine to hold that a city, or its officials, could not reduce their expenses by abolishing an unnecessary office, or refusing to make an appropriation for the salary of an office, when it was short of funds and did not need the services of the incumbent of such office."

Defendant also places reliance upon *Thomas* v. *City of Chicago,* 273 Ill. 479. There, admitted facts disclosed that in 1912 it became necessary to cut down the expense of all departments of the city of Chicago on account of an unexpected shrinkage in the revenues. The head of the department of health found it necessary to lay off approximately one third of the sanitary inspectors in his department, including plaintiff Thomas. The force of sanitary inspectors was distributed, when all were working, by districts, so the entire city would be covered, and the head of the department laid off the inspectors in such a manner that no part of the city was entirely neglected but a reduced force worked in each district. Sustaining the legality of the arrangement described, this court, following *Fitzsimmons* v. *O'Neill, supra,* held that the rules of the Chicago civil service commission did not apply to a suspension or lay-off not exceeding thirty days, when such suspension or lay-off is made in good faith and because of lack of funds. *Fitzsimmons* v. *O'Neill, supra,* and *Thomas* v. *City of Chicago, supra,* are decisive here. From the stipulated facts it affirmatively appears that the city of Joliet was acting in good faith in executing and effecting its lay-off program. The fact that the arrangement assailed was a rotating plan manifests the good faith and lack of any illegal attempt to discharge one or more individual patrolmen and firemen. Conversely, the facts in the case at bar do not warrant the imputation of an intent to evade the law but, on the other hand, the intent was clearly to avoid permanent discharges of members of the police and fire departments and to assure impartiality in the matter of suspensions or lay-offs. In short, the plan was not a subterfuge to circumvent civil service rules or the provisions of section 12 of the Fire and Police Commissioners act (Ill. Rev. Stat. 1939, chap. 24, par. 854, p. 589) which ordains that no officer or member of the police or fire departments of any city coming within the act may be sus-

pended for more than thirty days and then only pending an investigation. The basic purpose of both the Civil Service act and the Fire and Police Commissioners act is to afford reasonably satisfactory protection to public employees within the scope of the respective laws. The Fire and Police Commissioners act does not purport to deny a city the inherent right to discharge or lay off employees in good faith because of lack of work or for purposes of economy. Power to discharge or lay off employees in such cases exists independently of the provisions of the statute. The requirements relating to suspension and discharge tend to effectuate the purpose of the law, namely, to prevent the discharge or suspension of employees for political or other inadequate reasons and, in furtherance of this purpose, merely regulate the procedure by which an officer may be discharged or suspended for reasons personal to himself. It follows necessarily that the construction of section 12 of the Fire and Police Commissioners act is not involved in the present case, the precise problem, instead, being whether the city of Joliet, independently of the statute, has the power to lay off policemen and firemen where such action is undertaken in good faith and for purposes of economy. Its power so to do cannot be doubted. Manifestly, we are not warranted, under the guise of a strained construction of the law, in holding to the contrary.

Plaintiffs lay stress upon the reduction of the city's outstanding indebtedness during the years 1937 to 1941. The argument is, in effect, that defendant was without discretion in the matter of reducing its indebtedness and improving its credit and, hence, that the funds employed to reduce its debt should have been used for the purpose of keeping its police and fire forces intact. It is sufficient to observe that the city's finances well warranted the lay-off program instituted in January, 1941. The city was heavily indebted during the period of 1937 to 1941 and still owes large sums to various funds for previous diversions therefrom. As

pointedly observed by defendant, the return of the funds diverted is no less an obligation than the payment of current obligations. The conclusion is inescapable that the lay-off program was promulgated in good faith and for the legitimate purpose of economy and was, accordingly, within the power of the defendant to enact. Accordingly, the seven plaintiffs directly concerned were not entitled to salaries for the month of January, 1941.

The judgment of the circuit court is reversed to the extent it awarded plaintiffs Davidson, Greenwood, Hartford, Heinzel, McKean, Malloy and Metzger their respective salaries for the month of January, 1941. In all other respects, the judgment is affirmed.

*Reversed in part; affirmed in part.*