JACK L. PERLIN *et al.*, Plaintiffs-Appellants, *v.* THE BOARD OF EDUCATION OF THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (5th Division)   No. 79-157

Opinion filed June 20, 1980.

Ronald S. Cope and Peter M. Rosenthal, both of Ancel, Glink, Diamond & Murphy, P. C., of Chicago, for appellants.

Michael J. Murphy, of Chicago (Richard E. Girard and John L. Wren, of counsel), for appellees.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiffs filed a complaint for declaratory judgment and to recover salary lost as a result of a 4-week layoff ordered by defendants, the Board of Education of the City of Chicago (the Board) and its General Superintendent of Schools (the Superintendent). Pursuant to defendants' motion, the trial court dismissed plaintiffs' complaint with prejudice. Plaintiffs' motion to vacate the dismissal was denied and they have appealed. The sole issue before this court is whether the complaint states a cause of action. We reverse and remand.

Plaintiffs are certificated principals of Chicago public schools and the Chicago Principals Association (the Association), a voluntary organization of Chicago public school principals recognized by the Board as the official organization representing the Association's member principals in professional matters, including, among other things, questions pertaining to salaries and working conditions. On February 23, 1977, the Board adopted the Superintendent's recommendations for the second phase in a program for reducing the Board's projected financial shortage. As part of the reductions, the work year for principals was to be shortened from 12 months to 11 months. The layoff was to occur at various times during July and August of 1977, with an approximate loss to the principals of $1,365,629 in salary.

The Association instituted a grievance procedure against the Board to prevent the layoff of the principals. On June 14, 1977, the Board denied the relief requested and plaintiffs filed their 4-count complaint on June 17.

Count I of the complaint alleges a breach of contract. Although there was no written contract between the parties, plaintiffs allege that the terms of their employment were governed by Board Report 71-270, entitled "Administrative Compensation Plan," a memorandum of understanding between the parties and the Board's annual budget. The Administrative Compensation Plan set the principals' positions on a 12-month basis and the principals' salaries were established by the annual budget. Attached to plaintiffs' complaint are letters from the Board and the Board's advertisements for applicants to fill vacant principal positions. The exhibits state that the principals' employment was governed by the Administrative Compensation Plan. Plaintiffs further allege that they undertook their employment for the full 12 months and that the Board's

actions amounted to a unilateral alteration of their contract after plaintiffs had accepted employment and performed for most of the year. Plaintiffs also allege that there were funds available to pay them and that their percentage of salary reduction far exceeded reductions of any other class of the Board's employees.

Count II is based on the theory of promissory estoppel. Plaintiffs allege that the Administrative Compensation Plan had converted the principals' positions from a 10-month to a 12-month basis, thereby affirmatively representing that the principals' work year would extend over the full calendar year. Plaintiffs attached a copy of section 4—48 of the Rules of the Board, which requires principals to apply for a leave of absence in order to be absent from their duties during July and August. Plaintiffs allege that further evidence of the full calendar work year is found in the budgets for the fiscal years beginning September 1, 1971, which specified that the position of principal is a 12-month position. Plaintiffs also allege that the Board's representations were reasonably expected to induce the principals into making themselves available for work throughout the entire year and that the principals have performed in reliance on the Board's representations. Plaintiffs claim that funds are available to pay them and therefore, because of the Board's representations and the principals' reliance on those representations, the Board should be estopped to reduce the principals' work year and salary by laying them off for a month.

In count III, plaintiffs allege that the Board's action in ordering the layoff is arbitrary, capricious and discriminatory against the principals because they are suffering a greater financial loss than others in full year, administrative and supervisory positions who were also laid off and because there is no reasonable distinction between the principals and other 12-month employees who were not laid off for one month. Count IV alleges that Board Report 77-109-17, which provides for the layoff, constitutes a law impairing the obligation of contracts and thus violates both the Federal and State constitutions.

Plaintiffs asked that the trial court declare the rights of the parties and enjoin defendants from proceeding with the layoff. Plaintiffs additionally asked that they be paid their full compensation in the event that they were actually laid off.

Defendants responded to the complaint with a motion to strike and dismiss which attacked the complaint as a whole. Defendants allege that the principals were not hired on a calendar year basis and that their rights are governed by section 34—84 of the School Code. (Ill. Rev. Stat. 1975, ch. 122, par. 34—84.) Defendants also allege that the memorandum of understanding and the Administrative Compensation Plan are not contractual, but are policy statements which may be modified at will.

Defendants allege that the exhibits attached to the complaint show that the budget does not guarantee payment where layoff is necessary due to lack of funds and that plaintiffs admit the projected shortage of funds. Defendants further allege that they have the power to order good faith layoffs, that other employees were laid off as well, that the money plaintiffs allege is available for their salaries is not an existing fund and that there is no need for principals during the summer because of the virtual elimination of summer school programs.

After considering the arguments of the parties, the trial court dismissed the action with prejudice. This appeal followed.

OPINION

Plaintiffs contend that their complaint was improperly dismissed because they have alleged sufficient facts to state causes of action based on theories of contract, promissory estoppel and discrimination against the principals. We agree.

■ A motion to dismiss may be filed under either section 45 or section 48 of the Civil Practice Act. (Ill. Rev. Stat. 1977, ch. 110, pars. 45 and 48.) Although the Board has not specified the section under which it has brought its motion, we note that it raises none of the grounds specified in section 48 and we will therefore treat it as a motion under section 45. *Cain v. American National Bank & Trust Co.* (1975), 26 Ill. App. 3d 574, 325 N.E.2d 799.

A section 45 motion attacks only the legal sufficiency of the complaint and may not raise any factual issues. (*Johnson v. Nationwide Business Forms, Inc.* (1976), 41 Ill. App. 3d 128, 359 N.E.2d 171; *Cain.*) The motion admits all well-pleaded facts (*Acorn Auto Driving School, Inc. v. Board of Education* (1963), 27 Ill. 2d 93, 187 N.E.2d 722), and it must clearly appear that there are no facts which would entitle plaintiffs to relief for the dismissal to be warranted. (*Courtney v. Board of Education* (1972), 6 Ill. App. 3d 424, 286 N.E.2d 25.) On review, the allegations must be interpreted in the light most favorable to plaintiffs in determining whether their complaint has set forth a cause of action on which relief may be granted. *J. J. Harrington & Co. v. Timmerman* (1977), 50 Ill. App. 3d 404, 365 N.E.2d 721; *Wooded Shores Property Owners Association, Inc. v. Mathews* (1976), 37 Ill. App. 3d 334, 337, 345 N.E.2d 186, 189.

Defendants rely generally on the Board's statutory powers in support of their motion. Among the Board's powers, which are enumerated in article 34 of the School Code (Ill. Rev. Stat. 1977, ch. 122, pars. 34—1 through 34—128), are the power to "prescribe the duties, compensation and terms of employment of its employees * * *" (Ill. Rev. Stat. 1977, ch. 122, par. 34—16) and to "employ teachers and other educational employees and fix their compensation." (Ill. Rev. Stat. 1977, ch. 122, par.

34—18(8).) Principals are to be employed as the Board deems it necessary, in accordance with the rules and regulations of the Board. (Ill. Rev. Stat. 1977, ch. 122, par. 34—8.1.) In addition, the Board has the duty to adopt the annual school budget. Ill. Rev. Stat. 1977, ch. 122, par. 34—43.

■■ It is also well established that school boards have the power to do anything necessary and proper to give effect to their enumerated powers. (See, generally, *Board of Education v. Chicago Teachers Union, Local 1* (1975), 26 Ill. App. 3d 806, 326 N.E.2d 158; *Chicago Division of the Illinois Education Association v. Board of Education* (1966), 76 Ill. App. 2d 456, 222 N.E.2d 243; *Byerly v. Board of Education* (1978), 65 Ill. App. 3d 400, 382 N.E.2d 694.) Included in the Board's powers is the authority to lay off employees in good faith for lack of work or purposes of economy. *Kennedy v. City of Joliet* (1942), 380 Ill. 15, 41 N.E.2d 957; *Thomas v. City of Chicago* (1916), 273 Ill. 479, 113 N.E. 140; *Fitzsimmons v. O'Neill* (1905), 214 Ill. 494, 73 N.E. 797.

Plaintiffs do not question the authority of the Board. Rather, they assert that there are limits to what the Board may do and that the Board has gone beyond those limits. Those limits, in addition to those specifically drawn by statute, are that the Board's actions may not be arbitrary, discriminatory or unreasonable (*Richards v. Board of Education* (1960), 21 Ill. 2d 104, 109-10, 171 N.E.2d 37, 41) and, that, under *Kennedy, Thomas* and *Fitzsimmons,* the Board must act in good faith in ordering a layoff of its employees.

Plaintiffs first contend that the Board has violated the terms of a contract between the parties in ordering the layoff. Plaintiffs have alleged that the Administrative Compensation Plan, adopted by the Board as Board Report 71-270, establishes the position of principal as a 12-month job and that the budget sets out the salaries for the year. Plaintiffs have further alleged that the Board has repeatedly expressed to plaintiffs, as well as prospective principals, that the terms and conditions of their employment are governed by the plan; that when they undertook performance of their obligations plaintiffs had to follow the conditions set out in the plan, including availing themselves for work for a full 12 months; that the funds had been appropriated for their positions and were available to pay plaintiffs; and that the Board's actions thus constituted a unilateral alteration of the contract after plaintiffs had accepted the terms set by the Board and had performed for most of the year.

The Board mistakenly maintains that there is no contract because no document labeled as such was attached to the complaint. However, the legal effect of a document is not determined by its label. (*Bonde v. Weber* (1955), 6 Ill. 2d 365, 377, 128 N.E.2d 883, 889; see, *e.g., Chicago Division of the Illinois Education Association v. Board of Education* (1966), 76 Ill.

App. 2d 456, 222 N.E.2d 243, in which a document labeled "Memorandum of Understanding" was found to be a valid collective bargaining agreement between the Board and the collective bargaining agency selected by its teachers.) Thus, the mere absence of the word "contract" from any document cannot be used to defeat plaintiffs' claim.

■■ The Board correctly points out that the 1976-1977 budget is not a contract (Ill. Rev. Stat. 1977, ch. 122, par. 34—51), but that fact alone does not mean that no contract exists. Plaintiffs rely primarily on the Administrative Compensation Plan to establish their positions on a full calendar year basis, not on the budget. The budget merely defines the dollar amount appropriated as anticipated expenditures for principals' salaries. Nevertheless, the fact that the appropriation was made on a 12-month basis serves to support plaintiffs' position that the Board intended that they work a full 12 months.

Defendants further contend that plaintiffs had no vested right to continue to work for a specified rate of compensation, citing *Chicago Patrolmen's Association v. City of Chicago* (1974), 56 Ill. 2d 503, 309 N.E.2d 3, *cert. denied* (1974), 419 U.S. 839, 42 L. Ed. 2d 66, 95 S. Ct. 68, and *Gathemann v. City of Chicago* (1914), 263 Ill. 292, 104 N.E. 1085. Both cases are distinguishable. In *Chicago Patrolmen's Association,* plaintiffs were denied longevity increases because no appropriation had been made for such increases. Similarly, in *Gathemann* a public employee, whose job was defined by ordinance, was found not to be entitled to payment for overtime work where the ordinance was construed not to include overtime and no appropriation for overtime had been made. In the instant case the Administrative Compensation Plan provided for a 12-month work year and an appropriation for full payment to the principals had been made. The principals are not seeking payment at a higher rate; they are seeking employment for the full term they claim is a condition of their employment.

■■ Defendants maintain, however, that they have the power to establish and amend the budget and to lay off employees in the face of a deficit and that these powers cannot be changed by a collective bargaining agreement. While it is true that a contract cannot restrict or expand the Board's statutory powers (*Illinois Education Association Local Community High School District No. 218 v. Board of Education* (1975), 62 Ill. 2d 127, 340 N.E.2d 7), it is equally true that the Board can bind itself by contract so long as there is no violation of the School Code. For this reason the fixing of compensation for the Board's employees cannot be delegated away from the Board by contract. (*Weary v. Board of Education* (1977), 46 Ill. App. 3d 182, 360 N.E.2d 1112.) In *Weary,* the salary formulation in the contract allowed the union, not the school board's salary schedule, to determine which teachers received pay

increases. Unlike *Weary*, the case at bar involves no delegation of the Board's discretionary power. It is the Board that set the 12-month term in the Administrative Compensation Plan, and it is the Board that established the salary schedule and appropriated the funds at the schedule rate for the full 12 months. Furthermore, it is the Board that has specifically expressed that the terms and conditions of the principals' employment are governed by the plan.

■■ Plaintiffs have alleged specific facts which show that the Board has established the terms of their employment, that they have accepted those terms by performing, and that the Board appropriated funds which would enable it to meet the financial obligations it thereby created. We conclude that these allegations are sufficient to state a claim against the Board based on contract and that counts I and IV should therefore not have been dismissed. *Cf. Chicago Teachers Union v. Board of Education* (1973), 14 Ill. App. 3d 154, 301 N.E.2d 833 (complaint which failed to set forth the nature of the rights claimed or the factual basis of the alleged implied contract was insufficient); *Newby v. Board of Education* (1977), 53 Ill. App. 3d 835, 368 N.E.2d 1306 (complaint was insufficient where it set forth no more than a unilateral expectation of a contract by pleading unspecified statements of "actions and representations" and "conditions of employment").

■■ We also conclude that plaintiffs have pleaded a cause of action based on promissory estoppel. To sustain a cause of action in promissory estoppel, there must be an unambiguous promise upon which the party making it can reasonably expect the other to rely, followed by the second party's reliance resulting in his own injury. (*S. M. Wilson & Co. v. Prepakt Concrete Co.* (1974), 23 Ill. App. 3d 137, 318 N.E.2d 722; *Wickstrom v. Vern E. Alden Co.* (1968), 99 Ill. App. 2d 254, 240 N.E.2d 401.) The complaint alleges that the Administrative Compensation Plan changed the position of principal from a 10-month position to a full calendar-year position, that section 4—48 of the Rules of the Board of Education requires principals to apply for a leave of absence if they do not intend to work during the months of July and August, and that the Board's annual budget provides for the position of principal on a 12-month basis. The complaint also alleges that, during the school year, while plaintiffs performed their duties as principals, the Board continued to represent, in advertisements and grievance proceedings, that the position of principal was governed by the Administrative Compensation Plan.

Defendants contend that a caveat appearing in the budget forewarned plaintiffs not to rely on the budget as a liability to be met by the Board. The provision reads:

> "Section 3. That the appropriations herein made for salary and wages for officers and/or employees shall be regarded as

> maximum appropriations both as to the sum appropriated and the length of time for which the incumbent of each position is to be employed. No employee shall have the right to demand continuous employment and compensation by reason of the appropriation if it becomes necessary to lay him off on account of lack of work or lack of funds."

At best, the statement raises a question of fact as to whether the layoff was necessitated by a lack of work or lack of funds and whether it was reasonable for plaintiffs to rely on the Board's repeated representations regarding the Administrative Compensation Plan in light of the budget's cautionary statement. Moreover, plaintiffs are not seeking continuous employment and compensation "by reason of the appropriation" but by reason of the representations of continuous employment to be found in the Administrative Compensation Plan. Defendants raise another issue of fact when they argue that a copy of the budget is maintained at each school and that a principal must constantly refer to it in performing his or her duties. The latter fact cannot properly be considered in deciding the sufficiency of the complaint, for it was not contained in the complaint and therefore may not be raised in a section 45 motion. As to the other fact questions, they must be taken in the light most favorable to plaintiffs for purposes of the motion. Plaintiffs relied on the actions, statements and representations of the Board, which is authorized by statute to make determinations as to the principals' salaries and terms of employment. (See *Chicago Patrolmen's Association v. City of Chicago* (1974), 56 Ill. 2d 503, 309 N.E.2d 3, 6, *cert. denied* (1974), 419 U.S. 839, 42 L. Ed. 2d 66, 95 S. Ct. 68.) Accordingly, plaintiffs' count II was improperly dismissed.

Plaintiffs also contend that the Board acted in an arbitrary and discriminatory manner in singling out plaintiffs for a 20-day layoff when other 12-month employees did not receive similar reductions in work and pay. The allegations of count III set forth the details of plaintiffs' layoff and establish that there are other Board employees in administrative and supervisory positions who were not laid off to the same extent as plaintiffs. Plaintiffs' pleadings clearly establish similarly situated groups that were treated differently for no apparent reason and thus raise questions of fact and inform defendants of the nature of plaintiffs' claim. In *Courtney v. Board of Education* (1972), 6 Ill. App. 3d 424, 286 N.E.2d 25, a complaint making the same kinds of allegations was held sufficient to raise the claim that the board had acted in an arbitrary and discriminatory manner. We hold likewise.

The Board simply maintains that other employees were laid off as long as, or longer than, plaintiffs and there was therefore no discrimination. The fallacy in the Board's logic is that the bald assertion that other employees may have received harsher treatment in the layoff does

nothing to explain the rationale behind the layoff of any employees. That other employees may also have been subjected to discrimination does not justify the Board's actions toward the principals. The Board has actually raised a factual issue in seeking the dismissal, and the trial court should not have considered it in deciding on defendants' motion.

Finally, defendants rely on *Kennedy v. City of Joliet* (1942), 380 Ill. 15, 41 N.E.2d 957, *Thomas v. City of Chicago* (1916), 273 Ill. 479, 113 N.E. 140, and *Fitzsimmons v. O'Neill* (1905), 214 Ill. 494, 73 N.E. 797, in support of their argument that the layoff was reasonable and in good faith. They point to the recommended reduction shown in the second phase of their deficit reduction plan to show that there was indeed a shortage of funds and thus a fiscal need to economize by laying off the principals. This factual issue is at the heart of plaintiffs' case and should not have been decided on defendants' section 45 motion. Just as the annual budget is an estimate of the Board's anticipated expenditures and revenues (Ill. Rev. Stat. 1977, ch. 122, pars. 34—44 and 34—47), so is the reduction plan detailed in Board Report 77-109-17 an estimate of the existing deficit and ultimate reductions to result from the Board's efforts at economy. It is at most a unilateral determination and is not conclusive as to plaintiffs. Whether the plan was necessitated by the Board's financial status must be established by evidence which will either prove or disprove the validity of the Board's estimates and its resulting actions.

Essentially, the Board has argued that, because it has the authority to lay off the principals in good faith for economic reasons and because it ordered the layoff, the layoff was proper. This argument begs the question and, if accepted, forecloses the possibility of challenging the Board's actions, leaving its actions unreviewable. Plaintiffs have alleged facts which are sufficient to inform the Board of the claim against which it must defend and which, if true, would entitle plaintiffs to relief. By granting the Board's motion to dismiss under these circumstances, the trial court in effect granted the Board a decision on the merits of the case without requiring that the Board first place the parties at issue and without affording plaintiffs the opportunity to present their evidence.

Accordingly, the order denying plaintiffs' motion to vacate the dismissal of their complaint with prejudice is hereby reversed and the cause remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

SULLIVAN, P. J., and LORENZ, J., concur.