Jo Laverne ALDEN, Appellee,

v.

Vernon E. PRESLEY, Executor of the Estate of Elvis A. Presley, et al., Appellants.

Supreme Court of Tennessee,
at Jackson.

Aug. 30, 1982.

Henry M. Beaty, Jr., Memphis, for appellants.

Palmer E. Miller, Charles L. Glascock, Memphis, for appellee.

## OPINION

FONES, Justice.

This is an action against the estate of Elvis Presley to enforce a gratuitous promise to pay off the mortgage on plaintiff's home made by decedent but not consummated prior to his death.

The trial court denied recovery but the Court of Appeals found that plaintiff had relied upon the promise to her detriment and awarded plaintiff judgment on the theory of promissory estoppel.

### I.

Plaintiff alleged that she relied to her detriment on a promise made by the decedent to pay off the mortgage indebtedness on plaintiff's home. Defendant did not deny a promise was made by decedent but contended that plaintiff's continued reliance upon that promise following decedent's death constituted an unreasonable and unjustified action on her part, and furthermore, that any damage done to plaintiff occurred as a result of affirmative action taken by her despite her knowledge of decedent's death and with full knowledge that decedent's executor had denied legal liability to fulfill the promise.

Plaintiff, Jo Laverne Alden, is the mother of Ginger Alden, the former girlfriend of the late Elvis Presley. Presley was a singer of great renown throughout the world and a man of substantial wealth. In January of 1977, Presley became engaged to Ginger Alden. He was quite generous to several members of the Alden family including Ginger and her mother, the plaintiff. Gifts to plaintiff included the funds for landscaping the lawn and installing a swimming pool for the Alden home. Due to his close relationship with plaintiff's daughter, Presley also became aware of plaintiff's desire to obtain a divorce from her husband. Presley offered to pay all expenses incurred in the divorce proceeding, including furnishing plaintiff an attorney; to advance plaintiff money to purchase her husband's equity in the Alden home; and to pay off the remaining mortgage indebtedness on the Alden home.

As a result of these promises, plaintiff filed for divorce on the grounds of irreconcilable differences. On August 1, 1977, a property settlement agreement was executed in which plaintiff paid her husband $5,325.00 for his equity in return for a deed conveying all of his interest in the home to plaintiff plus a release of the husband from all further liability upon the mortgage indebtedness on the Alden home. The mortgage indebtedness at the time of the execution of the settlement agreement was in the sum of $39,587.66, and it is this amount which is the subject of the present suit, all the other gifts and promises to plaintiff having been fulfilled.

On August 16, 1977, Presley died suddenly leaving unpaid the mortgage indebtedness on the Alden home. On August 25, 1977, Drayton Beecher Smith, II, an attorney for the Presley estate, informed plaintiff that the estate would not assume liability for the mortgage indebtedness.

Plaintiff filed the present suit on February 14, 1978, to enforce the promise made by decedent to pay the home mortgage. On March 3, 1978, Smith informed plaintiff he could no longer represent her in the divorce action since he was serving as an attorney for decedent's estate. Plaintiff failed to employ new counsel and the divorce action was dismissed for failure to prosecute.

Plaintiff re-filed her divorce action in April 1978, upon the same grounds and sought approval of the property settlement agreement executed in August, 1977, in conjunction with the original divorce suit. The divorce was granted in April, 1980, on the grounds of irreconcilable differences, and the property settlement was approved by the court. Plaintiff did not disclose to the court in the divorce case that decedent's estate had informed her it was not their intention to pay the mortgage on the Alden home.

In the instant case, the trial court held that decedent did make a promise unsupported by consideration to plaintiff, that no gift was consummated for failure of delivery, that plaintiff and her husband suffered no detriment as she "wound up much better off after their association with Elvis A. Presley than either would have been if he had never made any promise to Jo Laverne Alden," and that plaintiff did not rely upon the promise since her divorce petition was filed subsequent to the present suit and subsequent to being told that decedent's estate would not accept legal responsibility for decedent's promise.

The Court of Appeals concurred in the trial court finding that there was no gift for failure of delivery, holding that delivery is not complete unless "complete dominion and control of the gift is surrendered by the donor and acquired by the donee," citing *Pamplin v. Satterfield,* 196 Tenn. 297, 265 S.W.2d 886 (1954); *Brown v. Vinson,* 188 Tenn. 120, 216 S.W.2d 748 (1949).

However, the Court of Appeals reversed the remainder of the trial court's decision by adopting and applying the doctrine of promissory estoppel holding that plaintiff had foregone remedies available to her in the divorce petition in reliance upon the promise made to her by decedent. The Court of Appeals reasoned the estate should be estopped from dishonoring that promise.

■ We concur in the reasoning of the trial court and Court of Appeals' findings that decedent did not make a gift of the money necessary to pay off the mortgage as there was no actual or constructive delivery. We find it unnecessary to address the question of whether or not Tennessee recognizes the doctrine of promissory estoppel because plaintiff has failed, as a matter of law, to prove essential elements of promissory estoppel, to-wit: detrimental reliance, and a loss suffered as a result of detrimental reliance.

## II.

The Court of Appeals relied upon definitions of promissory estoppel found in the *Restatement of Contracts* and L. Simpson's, *Law of Contracts.* Since these works present representative definitions of promissory estoppel we quote with approval from the Court of Appeals' opinion as follows:

"A concise statement concerning promissory estoppel is found in *Restatement of Contracts,* Section 90, as follows:

'A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'

A more thorough examination of the doctrine, its elements and limitations is set forth in L. Simpson, *Law of Contracts* § 61 (2d ed. 1965); to-wit:

Detrimental action or forbearance by the promisee in reliance on a gratuitous promise, within limits constitutes a substitute for consideration, or a sufficient reason for enforcement of the promise without consideration. This doctrine is known as promissory estoppel. A promisor who induces substantial change of position by the promisee in reliance on the promise is estopped to deny its enforceability as lacking consideration. The reason for the doctrine is to avoid an unjust result, and its

reason defines its limits. No injustice results in refusal to enforce a gratuitous promise where the loss suffered in reliance is negligible, nor where the promissee's action in reliance was unreasonable or unjustified by the promise. The limits of promissory estoppel are: (1) the detriment suffered in reliance must be substantial in an economic sense; (2) the substantial loss to the promisee in acting in reliance must have been foreseeable by the promisor; (3) the promisee must have acted reasonable in justifiable reliance on the promise as made."

## III.

■ It is well established in this State that settlement agreements between husband and wife that purport to settle the legal obligations of alimony and child support, over which the Court has initial and continuing statutory authority to determine, are not binding until approved by the Court. *See, e.g., Blackburn v. Blackburn,* 526 S.W.2d 463 (Tenn. 1975); *Penland v. Penland,* 521 S.W.2d 222 (Tenn. 1975); *Doty v. Doty,* 37 Tenn.App. 120, 260 S.W.2d 411 (1952); and *Osborne v. Osborne,* 29 Tenn. App. 463, 197 S.W.2d 234 (1946). The terms of such agreements, "are merely evidential in value and may be followed by the court in its award of alimony—they should be given great consideration but are subject to close scrutiny by the court." 29 Tenn.App. at 466–467, 197 S.W.2d at 236.

The property settlement agreement that the Aldens entered into expressly provided that it was "subject to Court approval."

## IV.

The residence of the Aldens and the mortgage indebtedness thereon was obviously subject to such disposition as alimony, as the circumstances of the parties justified at the time that the divorce was granted, April 1980.

Mrs. Alden did not inform the court that the estate had denied legal responsibility for the mortgage indebtedness, after she had entered into the property settlement

agreement, but instead, affirmatively sought approval of the property settlement agreement. Beyond question, she was entitled to relief from that portion of the property settlement agreement wherein she assumed the mortgage indebtedness, upon revealing to the divorce court that she agreed to assume the mortgage only because decedent promised to pay it off gratuitously, but that the estate denied liability subsequent to the execution of the property settlement agreement. She was represented by counsel and must be charged with the knowledge that those facts constituted a change of circumstances that, as a matter of law, entitled her to relief from that portion of the agreement.

In this action plaintiff has shown that decedent's promise induced her to assume a $39,587 mortgage as part of a property settlement agreement dated August 1, 1977. However, the property settlement agreement was not binding upon plaintiff or her husband until approved by the court and the estate's denial of liability for decedent's gratuitous promise before submission of the agreement to the court removed the element of detrimental reliance from the factual scenario of this case. It follows, plaintiff's reliance on the promise after August 25, 1977, was not reasonably justified and she suffered no loss as a result of justifiable reliance.

The judgment of the Court of Appeals is reversed and this case is dismissed. Costs are assessed against plaintiff.

HARBISON, C.J., and COOPER, BROCK and DROWOTA, JJ.