IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 11, 2009 Session

# KEVIN SERAMUR v. LIFE CARE CENTERS OF AMERICA, INC.

**Direct Appeal from the Chancery Court for Bradley County**
**No. 06-199    Hon. Jerri S. Bryant, Chancellor**

---

**No. E2008-01364-COA-R3-CV - FILED APRIL 2, 2009**

---

Plaintiff, a former employee of defendant, brought this action to enforce an employment contract for benefits allegedly due under the contract.  The Trial Court granted defendant summary judgment on the grounds that a provision in the employment contract to which the parties originally agreed to, was an unenforceable contract, as the provision amounted to an agreement to agree and dismissed the action.  On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, J., and J. STEVEN STAFFORD, J., joined.

Christina L. Mack and D. Aaron Love, Chattanooga, Tennessee, for appellant, Kevin Seramur.

Sam D. Elliott, Chattanooga, Tennessee, for appellee, Life Care Centers of America, Inc.

**OPINION**

Plaintiff began his employment with Life Care Centers of America, Inc., defendant, on November 1, 2004.  He worked for defendant until he voluntarily resigned from his employment on September 15, 2005.  On August 3, 2006, plaintiff brought this action alleging defendant had breached its contract with him and sought enforcement of the contract, as he understood its terms.

Defendant filed a Motion for Summary Judgment, and upon hearing the Motion the Trial Court granted the defendant summary judgment, and held that as a matter of law the contract

on which plaintiff sought relief was an unenforceable agreement to agree "which would require the Court to speculate upon which of one hundred and fifty–four possible facilities the parties would choose with mutual consent" and which sort of legal entity would be involved.

On appeal, plaintiff raised these issues:

A.  Whether the Trial Court erred when it granted summary judgment on the contractual cause of action upon a finding that it asserted an unenforceable agreement to disagree?

B.  Whether the Trial Court erred when it granted summary judgment on the promissory estoppel cause of action upon a finding that the record did not indicate "conduct on the part of the defendant constituting hardship or oppression verging on actual fraud?"

C.  Whether the Trial Court erred when it found that Life Care had performed the remainder of the contract?

Summary judgment is appropriate only when the moving party demonstrates that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.03; *Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn.1993). To meet this burden the moving party must either (1) affirmatively negate an essential element of the nonmoving party's claim; or (2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan v. Alltel Publ'g Co.,* 270 S. W. 3d 1, 8 - 9 (Tenn. 2008).

This Court reviews a summary judgment motion *de novo* as a question of law without a presumption of correctness. *Finister v. Humboldt General Hosp., Inc.,* 970 S.W.2d 435, 437 (Tenn.1998). The evidence and all reasonable inferences are viewed in the light most favorable to the nonmoving party. *Byrd,* at 210-211. If both the facts and conclusions to be drawn from them permit a reasonable person to reach only one conclusion, summary judgment is appropriate. *Robinson v. Omer,* 952 S.W.2d 423, 426 (Tenn. 1997).

Moreover, the interpretation of a contract is a question of law, and the trial court's interpretation of the contract is reviewed *de novo,* without a presumption of correctness. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn.1999).

First, plaintiff asks the Court to reverse the granting of summary judgment because the contract provided that defendant would give a 25% ownership interest in a nursing home to plaintiff, and argues that the terms of the contract between the parties as to the ownership interest were reasonably certain and provide a basis for determining the existence of a breach and for providing an appropriate remedy. According to plaintiff, the fact that the contract did not specify the exact entity to be partially transferred to him, but rather only provided that the entity would be

chosen by mutual consent of the parties, is neither too indefinite nor an essential term of the contract. Defendant, on the other hand, contends that the Trial Court was correct when it dismissed the breach of contract action upon its finding that the contract, as to the ownership interest in a Life Care entity, was only an agreement to agree, and thus unenforceable.

A plaintiff who alleges a breach of contract must prove "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of contract." *BancorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 227 (Tenn. Ct. App. 2006).

It is well settled that a contract "must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced.' "*Doe v. HCA Health Serv. of Tennessee, Inc*. 46 S.W.3d 191, 196 (Tenn. 2001). If an essential element of a contract is found to be indefinite it "may prevent the creation of an enforceable contract." *Id.* A contract must be sufficiently explicit so that a court can determine what are the respective obligations of the parties. *Doe* at 196. The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy. *Restatement (Second) of Contracts* § 33(2) (1981); *Four Eights, LLC v. Salem*, 194 S. W. 3d 484 (Tenn. Ct. App. 2005).

The undisputed material facts before the Trial Court were that plaintiff had only a written agreement with defendant that consisted of a written contract of employment, dated August 4, 2004, a letter from Mr. Preston to plaintiff, dated July 19, 2004, and a memorandum drafted by Mr. Oglesby, dated July 22, 2004. The August 4, 2004 employment contract made no reference to the agreement to transfer an equity interest in a Life Care facility to plaintiff. The July 19, 2004 writing stated:

> I am pleased to share with you a portion (1/4), of an operating partnership specifically related to one of our buildings. The selection of such a property would be with mutual consent and would be named and effective January 1, 2005.

The third writing, the Oglesby memorandum, stated, that its purpose was to confirm a verbal agreement relating to plaintiff's offer letter as follows:

> 1. One-fourth of entity to be given to Kevin will not require capital for Acquisition of his interest.
>
> 2. A guarantee of $50,000 or actual percentage of cash flow, whichever is greater.

Plaintiff admitted that he did not recall receiving verbal offers from Life Care, and that his contract was reflected in the written documents. Accordingly, the undisputed material facts before the Trial Court were that as a part of plaintiff's agreement to work for Life Care, he was to

receive a one-fourth ownership interest in an undetermined Life Care facility. The selection of that facility would be determined at a later date by mutual agreement of the parties, but he would not be required to contribute capital to acquire that ownership interest, and that he was guaranteed $50,000.00 or actual percentage of cash flow, whichever was greater. Although plaintiff contends in his brief that the minimum guarantee referenced the annual income he would receive from his ownership interest, the writings do not reflect this claim.

It is also an undisputed material fact that defendant furnished plaintiff with a blank LLC operating agreement that he understood would be the agreement that governed the offered one-fourth interest in the defendant entity. It is further undisputed that the operating agreement provided to plaintiff did not identify a specific Life Care entity which it applied to and that the formal operating agreement was never completed and was not signed by the parties.

Defendant established the foregoing undisputed material facts regarding the various Life Care entities which defendant and plaintiff were to mutually agree to regarding the partnership. There were approximately 230 Life Care facilities that were in operation at the time plaintiff left his employment with Life Care. Seventy-six of those facilities were operated by Life Care itself, and 154 were operated by a partnership, limited liability company or similar business entity affiliated with Life Care. The 154 facilities operated by a partnership, limited liability company or similar entity, ranged in size from 59 beds to 295 beds, and were located in 28 different states. Accordingly, the facilities available from which plaintiff and defendant could mutually agree on varied in size, age and location, factors which would cause a variance in the profitability between the facilities. The undisputed facts demonstrate that the agreement entered into between plaintiff and defendant to choose a facility by mutual consent was so indefinite and vague as to be unenforceable.[1] The agreement was an agreement to negotiate in the future as to the selection of actual facility or as this Court said in *Four Eights, LLC v. Salem,* 194 S.W.3d 484 (Tenn. Ct. App. 2005), the parties had made an "agreement to agree" to something in the future, and such agreements are unenforceable. We hold the Trial Court did not err when it held the agreement was an unenforceable agreement to agree and granted summary judgment on the breach of contract claim.

However, on appeal, plaintiff urges the Court to consider other theories under which the Court could construe the contract as enforceable. These theories include that defendant's action before the lawsuit was initiated, demonstrated that Life Care was bound by the contract, that Life Care breached its duty of good faith and fair dealing by failing to submit any facility for

---

[1]The facilities available from which Mr. Seramur and Life Care could mutually agree on varied in size, age and location, factors which would certainly cause a variance in the profitability between the facilities. Which of these 154 nursing homes with the variations in profitability was Mr. Seramur to become a partial owner of? Who were the other owners/partners/shareholders in the entity, Life Care and/or others? Who would be the manager of the entity and who would determine when distributions were to be made to the owners and how much? All of these questions demonstrate that the agreement entered into by Life Care and Mr. Seramur to choose a facility by mutual consent was so indefinite and vague as to be unenforceable.

consideration to plaintiff, but Life Care had an implied duty to at least present a facility to plaintiff, but failed to do so, and that although defendant made the initial payment of $50,000.00 on the contract, it breached the contract when it failed to make continuing annual payments. A review of the record from the Trial Court demonstrates that these various issues were not raised below and will not be considered by this Court on appeal. *Lovell v. Metro. Gov't,* 696 S.W.2d 2 (Tenn.1985); *Correll v. E.I. DuPont de Nemours & Co.* 207 S.W.3d 751, 757 (Tenn. 2006). While it is not necessary to address the above arguments, we note that none of the documents the parties agreed to constitute the contract contain a provision for an annual payment of $50,000.00. The memorandum drafted by Mr. Oglesby makes a reference to a "guarantee of $50,000.00 or actual percentage of cash flow, whichever is greater". The phrase is vague as to whether this guarantee is for one year, as long as plaintiff is employed by Life Care or for in perpetuity, whether plaintiff is employed by Life Care or not. Moreover, the LLC Operating Agreement, which the parties agree would have governed the terms of the 25% ownership interest had it come into being, clearly contemplated that should plaintiff leave Life Care for any reason, the partnership could be terminated by defendant without plaintiff's agreement. Accordingly, plaintiff's reference in the brief to the "annual" distribution or payment of a minimum of $50,000.00 is not supported by the undisputed provisions of the contract as the language is just too vague to ascertain its meaning.

The next issue raised by plaintiff is whether the Trial Court erred when it granted summary judgment on the promissory estoppel cause of action upon a finding that the record did not indicate "conduct on the part of the defendant constituting hardship or oppression verging on actual fraud? The complaint contains allegations of traditional breach of contract, but the theory of promissory estoppel was not specifically pled in the complaint nor was the complaint amended to encompass that cause of action. Facts that support the elements of promissory estoppel, however, were alleged in the complaint and the theory was fully advanced in plaintiff's opposition to defendant's motion for summary judgment.

The Tennessee Supreme Court defined the doctrine of promissory estoppel as a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and if it does induce such action or forbearance it becomes binding if injustice can be avoided only by enforcement of the promise. *Alden v. Presley,* 637 S.W.2d 862, 864 (Tenn.1982). The promisee's detrimental reliance on the promise either substitutes for consideration or, quite simply, justifies judicial enforcement of the promise in order to avoid injustice. *Id*. The doctrine has clearly defined limits: (1) the detriment the promisee suffered in reliance must be economically substantial; (2) the detriment to the promisee must have been foreseeable by the promisor; and (3) the promisee must have reasonably relied on the promise. *Id.* (citing *Law of Contracts* § 61 (2d ed.1965)). Finally, "the promise upon which the promisee relied must be unambiguous and not unenforceably vague." *Calabro v. Calabro,* 15 S.W.3d 873, 879 (Tenn. Ct. App. 1999). Plaintiff argues that while there are limits on the application of promissory estoppel, the limits do not include a requirement of proof that the defendant's conduct constituted hardship or oppression when the defendant has not raised a defense under the statute of frauds and that here Life Care has not raised such a defense. Plaintiff takes the position that the requirement of the defendant's conduct constituting "hardship and oppression verging on actual fraud' is only

proper in cases involving equitable estoppel and possibly promissory estoppel cases where the statute of frauds is raised as a defense.

This Court in *Nationsbank, N.A. (South) v. Millington Homes Investors, Ltd.*, No. 02A01-9805-CH-00134, 1999 WL 79204 at * 3-4 (Tenn. App. Feb. 19, 1999) discussed the distinct difference between the doctrines of promissory estoppel and equitable estoppel as follows:

> Promissory estoppel is defined as "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise .... *Nationsbank* at * 3.

The court remarked that promissory estoppel has not been recognized as an exception to the statute of frauds in Tennessee. *Id.* On the other hand, equitable estoppel is a distinct and disparate doctrine from promissory estoppel and is recognized in Tennessee as an exception to the statute of frauds. *See, Nationsbank* at * 3 (citing *Baliles v. Cities Serv. Co.,* 578 S.W.2d 621, 624 (Tenn.1979). Accordingly, while equitable estoppel has been a defense to the statute of frauds, promissory estoppel is not recognized as an exception to the statute of frauds. *Nationsbank* at *4. Thus, promissory estoppel is a sword, based on the failure to deliver on a promise, while equitable estoppel is a shield a plaintiff can raise against the defense of the statute of frauds when the defendant has knowingly misrepresented a fact.

Based on the holdings in *Nationsbank* and *Baliles,* the Trial Court was in error when it based its holding on its finding that Life Care's conduct did not constitute hardship and oppression, verging on actual fraud." However, we affirm the Judgment of the Trial Court on the promissory estoppel claim. It is well established that this Court may affirm a ruling based upon principles different from that relied upon by the trial court. *Knight v. Hospital Corp. of America*, No. 01A01-9509-CV-00408, 1997 WL 5161 at * 3. We are required to base our decision on the controlling legal principles, even though they have not been cited or relied upon by either party. *Dudley v. Unisys Corp.,* 852 S.W.2d 435, 439 (Tenn. Ct. App. 1992). Tenn. R. App. P. 36(a). One of the essential elements of a successful promissory estoppel claim is that the promise relied on must be unambiguous and not unenforceably vague. *Amacher*, 826 S.W.2d 480, 482 (citing *Perlin v. Board of Education,* 86 Ill. App.3d 108, 41 Ill. Dec. 294, 407 N.E.2d 792 (1980).

Here, plaintiff claims he relied on Life Care's promise to make him a 25% partner in a Life Care facility if he gave up his former job and came to work for Life Care. As previously analyzed under the breach of contract issue, the promise was an agreement to reach an agreement to a specific Life Care facility in the future and as such was too vague and ambiguous to be enforceable. Thus, a cause of action under the doctrine of promissory estoppel cannot be sustained and the Trial Court did not err when it dismissed the promissory estoppel claim.

Plaintiff also raised on appeal the Trial Court's statement in the final judgment that "[t]he provision relating to sharing an interest in a facility therefor lacks sufficient specificity to

enforce, although by the doctrine of elision the Court finds the remainder of the employment contract which was performed between the parties valid." In raising this issue, plaintiff admits that he did not have a clear understanding of what the Trial Court was addressing by the reference to "elision". The doctrine of elision allows a court, under appropriate circumstances when consistent with the expressed legislative intent, to elide an unconstitutional portion of a statute and find the remaining provisions to be constitutional and effective. *Planned Parenthood of Middle Tennessee v. Sundquist*, 38 S.W.3d 1, 22 (Tenn. 2000). We conclude the Trial Court's application of the doctrine to the employment contract was inappropriate. However, this was harmless error as neither party had raised any issue on the remainder of the employment contract.

We affirm the Trial Court's grant of summary judgment to Life Care Centers of America, Inc., and tax the cost of the appeal to Kevin Seramur.

_____
HERSCHEL PICKENS FRANKS, P.J.